ORIGINAL

FILED
MAY 6 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**RICHARD P. COOK, *et al.*, and COPAR PUMICE COMPANY,**

**Plaintiffs,**

**-vs-**

**No. 94-344L** 08-337 L
**Honorable Eric G. Bruggink**

**THE UNITED STATES,**

**Defendant.**

## MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR DAMAGES

COME NOW Plaintiffs, Richard P. Cook, *et al.,* and Copar Pumice Company, and pursuant to RCFC 7(b) and 41(a) submit this motion to enforce the terms of a settlement agreement reached between the parties herein and for damages, and state:

1. The history and procedural background of this case are set out in detail in one of this Court's published opinions. Consequently, only a brief recitation of the pertinent facts is required here. *See Cook v. United States,* 42 Fed. Cl. 788 (1999) (Ex. A attached hereto.)

2. In the 1980s, Plaintiffs located and staked claims to 23 contiguous pumice mining claims in Sandoval County, New Mexico, the "Brown Placer claims." In 1988, in order to pursue the development and marketing of their mining claims, Plaintiffs applied for a mining patent to the Bureau of Land Management, Department of the Interior ("BLM").

3. While the BLM was evaluating the Brown Placer claims, Congress passed the Jemez National Recreation Area Act, 16 U.S.C. § 460jjj *et seq.* ("JNRAA"), which prohibited patents to be issued after 1991 for mining claims located in the Jemez National Recreation Area

in Sandoval County, New Mexico. Plaintiffs' Brown Placer mining claims, at the El Cajete mine, are located within the Jemez National Recreation Area.

4. Consequently, in 1994, Plaintiffs filed a complaint in this Court under the Tucker Act, 28 U.S.C. § 1491. They sought damages for the deprivation of their vested property rights as a taking requiring just compensation. They further alleged that a mining patent would have been issued but for the enactment of the JNRAA.

5. In the *Cook* opinion referenced above at 42 Fed. Cl. 788 (1999), this Court held that the Brown Placer mining claims were valid mining claims and that a patent should have issued, and that the JNRAA had destroyed Plaintiffs' vested property interest.

6. On April 4, 2002, Plaintiffs entered into a Settlement Agreement (the "Agreement," Ex. B attached hereto), resolving all disputed matters between them and Defendant the United States in this case. Under the terms of that Agreement, the United States agreed that "plaintiffs will retain Brown Placer Mining Claims 9 through 12 as unpatented mining claims subject to all pertinent statutes and regulations." Under the Agreement, the parties also agreed to submit to the continuing jurisdiction of this Court in order to enforce the Agreement. (Ex. B, ¶ 4.)

7. Defendant the United States has recently breached its obligations under the Agreement. In violation of the terms of the Agreement, the United States has recently filed another Complaint contesting the validity of the Brown Placer Claims 9 through 12 and seeking to have them declared null and void on grounds that the pumice within the claims is not "a valuable mineral deposit" under applicable federal law (30 U.S.C. § 601), and do not exist in sufficient quantity or quality to comprise "a valid discovery of a valuable mineral deposit." (Ex. D, at [2-3]). The United States thus now contends that the Brown Placer Mining Claims are null

and void, which would include being and "null and void" as of the date of the Settlement Agreement. (*See* Ex. D attached hereto, *United States of Am. v. Kelly Armstong*, in the United States Department of the Interior, Bureau of Land Management, Contest No. NMNM 119839, filed February 5, 2008.)

8. The filing of the complaint constitutes a material breach of the Agreement. The United States has further breached the Agreement by conduct intending to obstruct Plaintiffs' continuing operations at the El Cajete mine. The Forest Service has ordered all mining operations to cease on the claims, instructed that reclamation should proceed and has refused to extend existing plans of operations or process new plans of operations. (*See* Ex. E.)

9. This Court has jurisdiction to enforce the Settlement Agreement between them and the United States, pursuant to applicable law, and the only reasonable interpretation of the Agreement upholds Plaintiffs' rights in their mining claims.

10. A memorandum in support of this motion is filed contemporaneously herewith.

WHEREFORE, Plaintiffs ask this Court to enforce the Settlement Agreement and, to the extent necessary, vacate the Joint Stipulation of Dismissal entered May 6, 2002 and reopen this proceeding. Plaintiffs request the Court to determine that Defendant United States has materially breached its obligations under the Settlement Agreement, to order Defendant the United States to withdraw or dismiss its complaint filed with the BLM on February 5, 2008, and to cease and desist from challenging the validity of the Brown Placer Claims 9 through 12, to process

plaintiffs' plans of operations and recommence mining, for their damages, costs and attorneys' fees, and for any further relief in their favor to which they are entitled.

Dated: April 29, 2008.

Respectfully submitted,

COMEAU, MALDEGEN, TEMPLEMAN & INDALL, LLP

By: ______________________
Joseph E. Manges
P.O. Box 669
Santa Fe, NM 87504-0669
(505) 982-4611
(505) 988-2987 (fax)
jmanges@cmtisantafe.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on this 29th day of April 2008 I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, on:

Terry M. Petrie, Esq.
U. S. Department of Justice, ENRD
1961 Stout Street, 8th Floor
Denver, CO 80294

Patricia Disert, Esq.
Office of the General Counsel
United States Department of Agriculture
U.S. Forest Service
500 Gold Avenue, SW, Room 11016
Albuquerque, NM 87103

______________________
Joseph E. Manges

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**RICHARD P. COOK, *et al.*, and**
**COPAR PUMICE COMPANY,**

**Plaintiffs,**

**-vs-**

**No. 94-344L**
**Honorable Eric G. Bruggink**

**THE UNITED STATES,**

**Defendant.**

**INDEX OF EXHIBITS TO MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR DAMAGES**

A. *Cook v. United States*, 42 Fed. Cl. 788 (1999)

B. Settlement Agreement dated April 4, 2002

C. Joint Stipulation of Dismissal with Prejudice filed May 6, 2002

D. Complaint (Contest of Mining Claim), *USA v. Kelly Armstrong, Debbie Cantrup, Richard P. Cook and Shirley A. Cook*, Contest No. NMNM 119839, dated February 5, 2008

E. Letter from Daniel J. Jiron, U.S. Forest Service, to Kelly Armstrong suspending the processing of the El Cajete Plan of Operation and the proposed El Cajete No. 2 Plan of Operation, dated February 13, 2008

Westlaw.



**H**
Cook v. U.S.
Fed.Cl.,1999.

United States Court of Federal Claims.
Richard P. COOK, et al., Plaintiffs,
v.
The UNITED STATES, Defendant.
**No. 94-344L.**

Jan. 27, 1999.

Applicants who submitted patent application for placer mining claims within the Jemez National Recreational Area brought suit claiming that enactment of the Jemez National Recreational Area Act (JNRAA) constituted a taking of vested property interests in the mining patent without just compensation. On plaintiffs' motion for partial summary judgment with respect to four of the claims, the Court of Federal Claims, Bruggink, J., held that: (1) applicants who described their locatable mineral deposit as "block pumice," were not limited to claiming the block pumice exclusion from nonpatentable common variety minerals under the Multiple Use Mining Act; (2) application properly described a locatable mineral deposit under the Multiple Use Act; and (3) passage of the JNRAA destroyed plaintiffs' property rights and did so without compensation.

Motion granted.

West Headnotes

**[1] Mines and Minerals 260 ⚷40**

260 Mines and Minerals
260I Public Mineral Lands
260I(C) Patents
260k40 k. Application, and Proceedings Thereon. Most Cited Cases

Mining patent applicants who described their locatable mineral deposit as "block pumice," were not limited to claiming the block pumice exclusion from the category of nonpatentable common variety minerals under the Multiple Use Mining Act; instead, applicants could base their claims on the discovery of the other type of locatable pumice, i.e., pumice having some property giving it distinct and special value. Multiple Use Mining Act of 1955, § 3, 30 U.S.C.A. § 611.

**[2] Mines and Minerals 260 ⚷40**

260 Mines and Minerals
260I Public Mineral Lands
260I(C) Patents
260k40 k. Application, and Proceedings Thereon. Most Cited Cases

Application for placer mining patents properly described a locatable mineral deposit under the Multiple Use Mining Act where application described a "block pumice" which was "unique" because of its size, purity, and lack of discoloration or staining qualities, and because it was valuable and marketable. Multiple Use Mining Act of 1955, § 3, 30 U.S.C.A. § 611.

***788** Sarah M. Singleton, Santa Fe, New Mexico, for plaintiffs. Galen M. Buller and R. Bruce Frederick, of counsel.
Michael Martin, Washington, D.C., for defendant.

**OPINION**

BRUGGINK, Judge.
This action, brought pursuant to the Tucker Act, 28 U.S.C. § 1491 (1994 & Supp. II 1996), asserts an uncompensated taking pursuant to the Fifth Amendment to the Constitution. Plaintiffs contend that the enactment of the Jemez National Recreational Area Act ("JNRAA"), 16 U.S.C. § 460jjj (1994), which prohibits the Bureau of Land Management ("BLM") from granting any new patents on public lands located within the Jemez National Recreational Area in Sandoval, New Mexico, constitutes a taking of their property. The matter is presently before the court on the plaintiffs' motion for partial

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
tabbies
A

summary ***789** judgment with respect to Brown Placer Mining Claims numbers nine through twelve ("Claims nine through twelve"). Oral argument was held on January 12, 1999, in Washington, D.C. For reasons set forth herein, plaintiffs' motion is granted.

BACKGROUND

The case was transferred to this judge on December 10, 1998. The background facts are discussed in *Cook v. United States,* 37 Fed.Cl. 435, 436-38 (1997), and are briefly summarized and supplemented here. Pursuant to the Mining Act of 1872 ("Mining Act"), 30 U.S.C. §§ 22-24, 26-30, 33-35, 37, 39-42, 47 (1994), plaintiffs filed a patent application for twenty-three placer mining claims (the "Brown Placer Mining Claims") on September 29, 1989, after locating pumice on lands located within the Jemez National Recreational Area. Plaintiffs published notice of their application, and no adverse claims were filed within sixty days after publication. On January 16, 1991, after accepting plaintiffs' payment of the statutory purchase price for a patent, BLM issued the first half of BLM Form 1860-1, the two-part final certificate, to plaintiffs.

On October 12, 1993, Congress enacted the JNRAA which bars BLM from issuing any new patents on land within the Jemez National Recreational Area after May 30, 1991. *See*16 U.S.C. § 460jjj-2(a)(1). During the period between BLM's issuance of the first half of the final certificate and Congress' enactment of the JNRAA, BLM did not perform a mineral examination to verify that plaintiffs had discovered valuable mineral deposits on the land described in their patent application.

Plaintiffs filed the instant action alleging that the enactment of the JNRAA constituted a taking of vested property interests in the mining patent without just compensation. They have moved for partial summary judgment on the issue of liability, claiming that they acquired equitable title to a mining patent when they complied with all statutory and regulatory requirements and received a final certificate. Defendant filed a cross-motion for summary judgment and a motion to dismiss for failure to state a claim, asserting that plaintiffs had no constitutionally protected right to a patent because BLM had not yet determined the validity of plaintiffs' claims.

The court earlier denied defendant's summary judgment motion, holding that "to the extent plaintiffs 'complied with all terms and conditions which entitle [them] to a patent[,]' [*Benson Mining & Smelting Co. v. Alta Mining & Smelting Co.,* 145 U.S. 428, 433, 12 S.Ct. 877, 36 L.Ed. 762 (1892) ], plaintiffs had a vested property interest and the JNRAA could not, consistent with the Fifth Amendment, eliminate that vested property interest without providing just compensation." *Cook,* 37 Fed.Cl. at 446-47. Included in the terms and conditions with which applicants had to comply was the discovery of a valuable mineral deposit. *See*30 U.S.C. §§ 22 and 29. A mineral examination enables BLM to confirm or dispute allegations in a patent application that the claims contain a valuable mineral deposit. On April 20, 1995, prior to ruling on the parties' cross-motions, the court suspended proceedings pending defendant's completion of a mineral examination.[FN1] Defendant's final report on the mineral examination, filed on October 15, 1996, indicates that there was locatable pumice on Claims nine through twelve and that elements of a contest were present with respect to the remaining nineteen claims. Because this evidence disputing the existence of valuable mineral deposits on nineteen of plaintiffs' claims demonstrated a dispute as to a material issue of fact, the court denied plaintiffs' motion for partial summary judgment with respect to those nineteen claims.

FN1. The JNRAA requires the Secretary of Agriculture to conduct mineral examinations of all unpatented mining claims within the Jemez National Recreational Area, including those for which a patent applica-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion had been filed, within three years of October 12, 1993. *See*16 U.S.C. § 460jjj-2(d).

As to Claims nine through twelve, however, the court granted defendant "an opportunity to present evidence demonstrating that plaintiffs failed in other ways to comply with 'all terms and conditions which entitle [them] to a patent.' "*Cook,* 37 Fed.Cl. at 447. In ***790** response to this opportunity, defendant now contends that plaintiffs' use of the phrase "block pumice" in their patent application limits them to claiming block pumice of over two inches under the Multiple Use Mining Act of 1955 ("Multiple Use Act"), 30 U.S.C. §§ 601, 603, 611, 615 (1994). Because their application did not claim that the pumice was over two inches, defendant argues, plaintiffs did not properly describe a locatable mineral in their patent application.

DISCUSSION

[1] Defendant argues that plaintiffs do not have a vested right in a mining patent on Claims nine through twelve because they had not fully complied with the patent application requirements of the Mining Act prior to October 12, 1993, the date that Congress enacted the JNRAA. Specifically, it contends that plaintiffs failed to describe a locatable mineral deposit in their application. Defendant asserts that because plaintiffs described their mineral deposit as "block pumice," they were limited to claiming the block pumice exclusion under the Multiple Use Act. Thus, plaintiffs' description of and data on the mineral deposits in Claims nine through twelve would not, even if verified, support the discovery of pumice having one dimension of two inches or more. As the following discussion demonstrates, however, defendant's argument is unavailing.

The Multiple Use Act identifies the types of pumice that are locatable under the Mining Act. It states: "No deposit of common varieties of sand, stone, gravel, pumice, pumicite, or cinders ... shall be deemed a valuable mineral deposit within the meaning of the mining laws of the United States so as to give effective validity to any mining claim hereafter located under such mining laws...."30 U.S.C. § 611 (1994) (hereafter, "section 611"). The act, however, specifically excludes certain distinct minerals from the scope of common variety minerals:

"Common varieties" as used in this subchapter and sections 601 and 603 of this title does not include deposits of such materials which are valuable because the deposit has some property giving it distinct and special value and does not include so-called "block pumice" which occurs in nature in pieces having one dimension of two inches or more.

*Id.* In other words, although pumice is presumptively a common variety mineral, and thus non-locatable, under two distinct circumstances it qualifies as a locatable mineral: (1) if it has some property giving it distinct and special value, or, (2) if it is block pumice having one dimension of two inches or more.

There is no question that the mineral examination on these four claims revealed the presence of pumice in the first category, i.e., pumice having some property giving it distinct and special value. Defendant argues, however, that because plaintiffs' application included a reference to the minerals on their claims as "block pumice," plaintiffs were limited to the block pumice exclusion under section 611 of the Multiple Use Act. Because, furthermore, the application describes some of the pumice as "3/4 in diameter[,]" it is asserted to be defective on its face, irrespective of whether either block pumice of two inches or more or pumice having distinct and special value exists on the claims. Defendant bases its argument on the premise that section 611 limits block pumice exclusively to pumice having one dimension of two inches or more. Thus, defendant contends that by including the word "block" in the description of their mineral deposit, plaintiffs defacto described their mineral deposit as block pumice having one dimension of two inches

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

or more.

Defendant relies on *United States v. Multiple Use,* 120 IBLA 63 (1991). Multiple Use filed a patent application describing the valuable mineral that it found on its claims as pumice. *See id.* at 74. The Forest Service issued a mining claim contest complaint alleging that Multiple Use's claims were invalid because they were located for a mineral designated as "common variety" under section 611. *See id.* at 75, 81. During the hearing, Multiple Use asserted that its claims contained both block pumice having one dimension of two inches or more and pumice that is otherwise considered uncommon. *See id.* at 84. The Interior Board of Land Appeals ("IBLA") concluded that only 0.72 percent to 1 percent of the pumice on Multiple Use's ***791** claims qualified for exclusion under section 611 as block pumice having one dimension of two inches or more. *See id.*

In a footnote, the IBLA stated: "[t]hroughout the hearing witnesses for Multiple Use referred to any pumice having a dimension in excess of one inch as block pumice. The Common Varieties Act, 30 U.S.C. § 611 (1988), clearly states that block pumice must have one dimension of 2 inches or more." *Id.* at 84. This footnote merely explains why testimony which described the minerals found on Multiple Use's claims as block pumice having one dimension of one inch or more cannot be used to counter the assumption that pumice is a common variety mineral. In no way, however, does the decision limit the use of the phrase "block pumice" by patent applicants. In fact, the IBLA concluded that the other 99 percent of the pumice was open for consideration as uncommon variety pumice, *see id.* at 84-85, despite the fact that Multiple Use may have referred to portions of that 99 percent as block pumice.

Nothing in the Multiple Use Act or the Mining Act defines the phrase "block pumice" or limits its use in patent applications to pumice having one dimension of two inches or more. Section 611 merely excludes a subset of block pumice-that having one dimension of two inches or more-from consideration as common variety pumice. Moreover, as plaintiffs have demonstrated, the word "block" is used by geologists to describe fragments of rock ranging in size from 4 millimeters to 256 millimeters (approximately .16 inch to 10.1 inches). *See Glossary of Geology and Related Sciences* at 33 (American Geological Institute, 2d ed.1960). Hence, plaintiffs' use of the phrase "block pumice" to describe fragments of pumice having one dimension of three-quarters of an inch does not limit plaintiffs to the block pumice exclusion under the Multiple Use Act.

[2] The second element of defendant's argument-that because plaintiffs based their claims on the discovery of "block pumice" having one dimension of two inches or more, they failed to properly describe a locatable mineral on Claims nine through twelve-thus fails. The fact that plaintiffs' application contains no data, such as grain-size measurements, on Claims nine through twelve which, if verified, would demonstrate the discovery of pumice having one dimension of two inches or more is therefore not fatal, so long as the first exception was properly invoked. It was.

As evidenced throughout their application, plaintiffs based their claims on the discovery of the other type of locatable pumice-pumice having some property giving it distinct and special value. Thus, the pertinent issue is whether plaintiffs' application properly described that type of locatable mineral.

BLM regulations require patent applicants to file a narrative statement describing the mineral found and data supporting the claim, which the Government may use in conducting field examinations to verify the claims:

At the time the proof of posting is filed the claimant must file in duplicate an application for a patent showing that he has the possessory right to the claim, in virtue of a compliance by himself (and by his grantors ...) with the mining rules, regulations, and customs of the mining district or State in which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the claim lies, and with the mining laws of Congress, such statement to narrate briefly, but as clearly as possible, the facts constituting such compliance, the origin of his possession, and the basis of his claim to a patent.... The showing in these regards should contain sufficient data to enable representatives of the Government to confirm the same by examination in the field and also enable the Bureau of Land Management to determine whether a valuable deposit of mineral actually exists within the limits of each of the locations embraced in the application.

43 C.F.R. § 3862.1-1(a) (1997). Applications for placer mining claims with mineral deposits other than gold "must describe fully the kind, nature, and extent of the deposit, stating the reasons why the same is ... regarded as a valuable mineral claim." *Id.* § 3863.1-3(a).

Common variety minerals do not qualify as valuable because they "do not possess a distinct, special economic value for such use over and above the normal uses of the general run of such deposits." *Id.* § 3711.1(b). ***792** Uncommon varieties include mineral deposits with "distinct and special properties making [them] commercially valuable for use in a manufacturing, industrial, or processing operation." *Id.* In determining the commercial value of a mineral deposit, BLM considers factors such as the "quality and quantity of the deposit, geographical location, proximity to market or point of utilization, accessibility to transportation, requirements for reasonable reserves consistent with usual industry practices to serve existing or proposed manufacturing, industrial, or processing facilities, and feasible methods for mining and removal of the material." *Id.*

The *American Law of Mining* recites that "[t]he extent of information which must be initially submitted with a patent application is not settled." 2 *American Law of Mining,* § 51.07[8] at 51-49 (2d ed.1996). Patent applications, however, "should contain, in detail, such data as will support the claim that the land applied for is placer ground containing valuable mineral deposits...."43 C.F.R. § 3863.1-3(a). Section 3863 of the BLM Manual, under the heading "Placer Mining Claim Patent Applications," states that "[t]he information concerning the geology and mineral quantity and quality must be sufficiently detailed for the State Office mineral examiner to determine that the applicant has a reasonable likelihood of success in developing a valuable mine, subject to verification on the ground by the mineral examiner." BLM Manual § 3863.

Plaintiffs' application for Claims nine through twelve properly describes a locatable mineral deposit. It demonstrates that they based their claims on the discovery of unique pumice that is more valuable than ordinary pumice due to its distinct purity, size, and color. For example, in their application plaintiffs state:

Block pumice was erupted from the El Cajete vent in a series of eruptions, at least 10 or more in number, over a relatively short period of time. Little or no erosion or weathering occurred between eruptions so that the pumice *shows little discoloration, and no deterioration.*

....

The base of the El Cajete pumice deposit is irregular; it is sometimes marked by a thin surge deposit, sometimes by a thin clay-rich layer from a few inches to a few feet thick, and sometimes the block pumice rests directly on the rhyolite with no material in between. The *unique quality of the pumice is evidenced by its remarkable purity;* the average number of lithic fragments is probably less than 20% of the total mass and some exposures contain less that 1% lithic impurities. Because there was little time between eruptive events little or no weathering or erosion took place in the deposit. As soon as the pumice dries out *it is uniformly white and contains almost no staining or discoloration.*

....

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

...*The "Pumice Grain Size" measurements* shown on the diagrams forming Exhibit "T", attached hereto and incorporated herein by reference *indicate an average block content (blocks greater that 3/4 in diameter) of over 50%, demonstrating the uniqueness of the deposit.* Ordinary pumice generally contains less than 5% block pumice. In additions, *an extraordinarily high percentage of the blocks are actually in excess of 2* , again demonstrating the uniqueness of this deposit.

....

The block pumice is distributed very uniformly throughout the claims and represents over 50% of the material on average and locally is far more abundant (over 90% in some cases). *From a commercial point of view this distribution is extremely valuable and coupled with the purity and lack of discoloration in much of the section enhances the uniqueness of the deposit.*

....

From the processing plant the material is sold FOB to consumers. The principle specifications which must be met by the producer are *uniform white color, strict size limits, and a supply sufficient to meet demand.*

....

*The block pumice discovered by Applicants on each claim is of sufficient quality* ****793*** *and quantity to show present marketability at a profit. Block pumice is currently in demand for fabric treatment, landscaping, and manufacturing* purposes. Mining operations conducted by Applicants' lessee at the Los Conchas Mine, which are at a pilot test stage and not yet at full capacity, currently generate royalties to Applicants based on a gross profit in excess of $5,000.00 per week. Full production at Los Conchas Mine alone, which is planned throughout 1990 and beyond pursuant to the schedule set forth in the 1989 Plan of Operations, will generate royalties based upon a gross profit in excess of $29,000.00 per week.

....

*Market demand for block pumice is increasing steadily,* and demand in the United states far exceeds domestic supply.... The demand for the pumice in question is particularly high due to its purity and size.

Plaintiffs' Patent Application ("Application") at 23, 24, 28, 31, 34, 37, and 38 (emphasis added). These excerpts demonstrate that plaintiffs intended to base their mining claims on the discovery of a mineral that they call "block pumice" which is "unique" because of its size, purity, and lack of discoloration or staining qualities, and because it is valuable and marketable. This is more than sufficient to claim discovery of a locatable mineral under the Multiple Use Act.

Plaintiffs' application included a forty-page sworn statement which describes the kind, nature, and extent of their mineral discovery, narrates facts relating to the basis for their claim, and includes verifiable data showing the existence of a valuable mineral deposit as required by the BLM's patent application regulations. *See*43 C.F.R. §§ 3862.1-1(a) and 3863.1-3. It also provides data from which government officials could confirm the location upon field examination. In their application, plaintiffs stated that they "discovered and located a valuable placer mineral deposit of block pumice on each of the Claims." Plaintiffs described the depth and thickness of the El Cajete pumice deposit and detailed the distinct and valuable properties of the pumice on their claims. They also provided grain-size measurements of the pumice and explained how they arrived at the average block content, describing the samples used and the method of measurement. Plaintiffs stated that "[t]he eight areas utilized [for sampling] are scattered over more than three (3) miles of exposures and provide a representative sample of the deposit as a whole." (Application at 29.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs referred to Exhibit W of their application, which indicates the mining costs and profits of their pilot test and the estimated costs and profits of future production. Exhibit X contains the sales and production figures for their pilot test, and Exhibit Y describes the domestic use and production of pumice. Plaintiffs compared the sales price of the uncommon variety pumice mined from their claims, which ranged from $5.50 to $28.80 per cubic yard, to the appraisal price for common variety pumice, which was $0.25 per cubic yard, demonstrating the special economic value of their pumice deposits.FN2

FN2. Exhibit U is a letter from Bob Crostic of the Jemez District Recreation and Lands staff, quoting the appraisal price from common variety pumice as of August 15, 1989. Exhibit W contains the sales prices for pumice mined from the pilot mine on plaintiffs' claims.

Defendant's final argument, drawn from the following *dicta* in *Kitts,* 84 IBLA 338 (1985), is that plaintiffs failed to make a *prima facie* showing of a valuable mineral discovery:

An applicant has an obligation to support his application for mineral patent with sufficient descriptive information and data to permit the BLM mineral examiner, on review in his office, to conclude that each claim was valid and that all prerequisites for patent had been met, subject only to *confirmation* upon field examination. In short, the patent application must make a *prima facie* showing that he is entitled to the patent he seeks. This is a reasonable requirement because, otherwise, BLM would be obliged to waste the valuable time of its mineral examiners to conduct costly field examinations based upon information which did not even show the patent application to be meritorious on its face.

*Id.* at 343.

In *Kitts,* the IBLA affirmed a BLM decision rejecting Kitts' patent application without***794** prejudice because he "failed to submit a mineral survey of the unsurveyed land encompassed by his claims ...[,]" and the economic and geologic information was insufficient to support the allegation that he had discovered a valuable mineral. *Id.* at 339. With regard to Kitts' inadequate economic and geologic information, the IBLA stated:

Specifically, appellant has provided no meaningful description of the geology on the claims *or* in the general area; no substantiated description of the quantity and quality of the ore alleged discovered; no description of the discovery points; no description of the samples taken in terms of their location, size, the sampling technique employed, or the means of their evaluation; no description of the workings presently existing on the respective claims, if any; and no description of the $500 in improvements which allegedly have been installed or constructed for the benefit of each of the claims.

*Id.* at 342. The IBLA also found that the applicant's economic analysis was problematic because he failed to ascribe any cost to labor, used an overstated average price for gold, and based his production estimates on a non-typical and unproven production technique. *See id.* Based on the absence of a mineral survey and the other information described above, the IBLA affirmed BLM's decision rejecting the application. *See id.* at 343.

The instant case is factually distinct. In *Kitts,* the IBLA's description of the deficiencies in Kitts' application reads as a virtual index of the information plaintiffs here submitted with their application. For example, unlike the application in *Kitts,* plaintiffs described the geology of the land encompassing their claims in detail and included a narrative on the origin and geological history of their discovery.FN3 Plaintiffs also detailed the quantity and quality of the pumice discovered. They discussed the location, size, and depth of the El Cajete pumice deposit which encompasses their claims, as well as the surface exposure of block pumice. Plaintiffs submitted diagrams of the drill hole cuts, including the results of drill hole cuts on Claims nine through eleven,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which illustrate the depth of the block pumice deposit on each claim. Also included was a diagram illustrating the outer boundary of their contiguous claims and showing the location of the drill holes and the pumice outcrops. Exhibit S to plaintiffs' application is a diagram of the drill holes and road cuts. Plaintiffs described the method they used for deriving the quantity and size of the pumice and the locations and representative nature of the samples that they used. At least $500 worth of improvements were performed for each claim. Plaintiffs submitted sworn statements from two disinterested witnesses as proof of their expenditures. Finally, plaintiffs detailed the work done on the mine site, the mining operations conducted during the pilot test stage by applicants lessee, including the production and gross profits at the time they submitted their application and estimated future production figures, and the market demand for the type of pumice they discovered. Plaintiffs' application thus did not contain substantive deficiencies, unlike Kitts' application.

FN3. Their application explains the origin of the pumice deposit, as follows:

> The massive block pumice deposit underlying Applicants' Claims was erupted as one of the most recent events in the development of the present Jemez Caldera. The pumice is derived from a small crater called El Cajete in the moat zone of the caldera and ... was deposited in an arcuate pattern covering an area primarily south and west of the crater....

(Application at 21.)

The court, in any event, has misgivings about the statement in *Kitts* that applicants must submit data sufficient "to permit the BLM mineral examiner, on review *in his office,* to conclude that each claim was valid and that all prerequisites for patent had been met...."*Kitts,* 84 IBLA at 343 (emphasis added). It is at odds with 43 C.F.R. § 3862.1-1, which states: "The showing ... should contain sufficient data to enable representatives of the Government to confirm the same by examination *in the field.*" *Id.* (emphasis added). In *Brattain Contractors, Inc.,* 37 IBLA 233 (1978), the IBLA interpreted the mining laws as precluding BLM from rejecting a patent application because it fails to include sufficient evidence of discovery. *See id.* at 240 ("[I]t is premature to ***795** reject the patent application on the adjudicator's finding of insufficient evidence of discovery.").[FN4] The IBLA stated: "Before there can be any final disposition of a mineral patent application which is otherwise acceptable, there must be a mineral examination of the subject claims for the purpose, inter alia, of obtaining evidence tending either to confirm or refute the allegation that qualifying discoveries have been made." *Id.*[FN5] In any event, even if this court accepted the more burdensome showing required under *Kitts,* plaintiffs' application includes precisely the type of information that the IBLA required.

FN4. Because BLM rejected Kitts' application for failing to submit a survey and for deficiencies in information and data supporting Kitts' claim, it is unclear whether *Kitts* is at odds with *Brattain.* In *United States Steel Corp.,* 52 IBLA 319 (1981), the IBLA observed that BLM must reject an application which is not accompanied by a mineral survey of any unsurveyed land. *See id.* at 324. One of the primary reasons that BLM rejected Kitts' application was because Kitts failed to submit a mineral survey. *See Kitts,* 84 IBLA at 339. In *United States Steel,* the IBLA stated that BLM could properly reject a patent application in which applicants failed "to comply with a clear requirement of the regulations relating to the form of the application." *Id.* at 324. The IBLA also stated, however, that "it is premature to reject the patent application on the adjudicator's finding of insufficient evidence of discovery." *Id.* at 323. *Kitts* may be read in conformity with *United States Steel* assuming Kitts' applic-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ation was found to have been so manifestly deficient in information that it represented a failure "to comply with the clear requirement of the regulations relating to the form of the application...."*Id.* at 324.

FN5. *Kitts* is also criticized in *American Law of Mining,* which states:

> Dennis J. Kitts states in dicta that the information and data must be sufficient to enable a BLM mineral examiner to conclude "on review *in his office* " that a claim is valid and meets the requirement for a patent, apparently including the requirements of a discovery. The opinion goes on to state that a *prima facie* showing is required. It is not clear that these statements are in accord with prior law or with 43 C.F.R. § 3862.1-1. Nor is it clear what a "prima facie showing" means in the context of a patent application because the term generally is used only in relation to evidentiary burdens in adversarial proceedings.

> 2 *American Law of Mining,* § 51.07[8] at 51-49, n. 126.1 (citations omitted).

There being no other showing by defendant that plaintiffs failed to comply with the terms and conditions entitling them to a patent, and in view of the court's prior decision that compliance with the terms and conditions of a patent gives rise to a vested property right, it is undisputed that the passage of the JNRAA destroyed plaintiffs' property right and did so without compensation. It follows that plaintiffs' motion for summary judgment as to liability must be granted.

CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment is granted. On or before February 12, 1999, the parties shall file a joint status report proposing a schedule for resolving the issue of compensation, including proposed dates for discovery cutoff and the filing of pre-trial materials, as well as the date and location of trial. Trial should conclude no later than October 29, 1999.

Fed.Cl.,1999.
Cook v. U.S.
42 Fed.Cl. 788

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RICHARD P. COOK, et al., and COPAR PUMICE COMPANY, Plaintiffs, | ) | |
| v. | ) | No. 94-344L Honorable Eric G. Bruggink |
| THE UNITED STATES, Defendant. | ) | |

**SETTLEMENT AGREEMENT**

Plaintiffs and Defendant, by and through their attorneys of record, hereby stipulate as follows:

1. Plaintiffs and Defendant have engaged in good faith settlement negotiations to avoid further litigation in the United States Court of Federal Claims.

2. Plaintiffs and Defendant desire to enter into this agreement of compromise and settlement for the purpose of fully and finally settling and resolving all claims in this action.

3. Defendant agrees to pay Plaintiffs and Montgomery & Andrews, P.A., as counsel for Plaintiffs, the sum of $3,911,838.00. This amount includes just compensation, all interest, attorneys fees and costs, and any other litigation expenses. Plaintiffs agree that the payment of this amount will constitute a full, complete, and final resolution of all of Plaintiffs' claims against the United States, legal or equitable, that the plaintiffs have asserted or could have asserted either in this case, Docket No. 94-344L, or in the administrative proceeding entitled *Kelly Armstrong, et al.*, IBLA No. 2000-3, currently pending before the Interior Board of Land Appeals. Plaintiffs will file a

EXHIBIT B

withdrawal of their case in the administrative proceeding entitled Kelly Armstrong, et al., currently pending before the Interior Board of Land Appeals, within 10 days following receipt of the sum of $3,911,838.00 as specified in this agreement. Plaintiffs will provide a copy of the notice of withdrawal to the United States at the same time it is filed with the Interior Board of Land Appeals. Plaintiffs agree not to file any further administrative or judicial appeals of Administrative Law Judge James H. Heffeman's August 18, 1999, decision in the administrative proceeding entitled *United States v. Armstrong*, Docket No. NMNM 97937, which concluded that Brown Placer Mining Claims Nos. 1-8, 17-22, 41-44, and 83 are void. Plaintiffs hereby relinquish the Brown Placer Mining Claims Nos. 1-8, 17-22, 41-44, and 83, which are also at issue in this case before the United States Court of Federal Claims, Docket No. 94-344L. Defendant agrees that Plaintiffs will retain Brown Placer Mining Claims Nos. 9-12 as unpatented mining claims subject to all pertinent statutes and regulations. The parties acknowledge that Plaintiffs are prohibited from the disposal of the common variety pumice produced from Brown Placer Mining Claims Nos. 9-12 pursuant to 16 U.S.C. § 460jjj-2(b).

4. Plaintiffs and Defendant submit themselves to the continuing jurisdiction of the United States Court of Federal Claims, subject to applicable law, in the event, and for the sole purpose, of any proceedings to enforce this agreement. Upon satisfaction of the terms of this settlement agreement, the parties agree to submit to the Court of Federal Claims a joint stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(B) of the Rules of the United States Court of Federal Claims.

5. This agreement is the result of compromise and settlement, and shall

not be construed as an admission by Defendant of any legal or specific monetary liability as to any or all of Plaintiffs' claims for just compensation, interest, attorneys fees, costs, and any other litigation expenses, or any other kind of monetary relief or compensation, nor shall the settlement be interpreted to constitute a precedent or argument in this or any other case.

Dated: April 4, 2002

MONTGOMERY & ANDREWS, P.A.

By [signature]
Sarah M. Singleton
Galen M. Buller
Andrew S. Montgomery
Post Office Box 2307
Santa Fe, New Mexico 87504-2307
Telephone: (505) 982-3873
Facsimile: (505) 982-4289

Attorneys for Plaintiffs

[signature: Terry M. Petrie]
TERRY M. PETRIE
Environment & Natural Resources Division
Department of Justice
999 18th Street
Suite 945, North Tower
Denver, Colorado 80202

Telephone: (303) 312-7355
Facsimile: (303) 312-7331

Attorney for Defendant and Authorized Representative of the Attorney General

OF COUNSEL:
KAREN HAWBECKER
Office of the Solicitor

ORIG: IP
cc: JT

FILED
MAY 6 2002
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

02 MAY 10 AM 9:40

| | |
|---|---|
| RICHARD P. COOK, et al., and COPAR PUMICE COMPANY, Plaintiffs, v. THE UNITED STATES, Defendant. | No. 94-344L<br>Honorable Eric G. Bruggink |

## JOINT STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Rule 41(a)(1)(ii) of the Rules of the United States Court of Federal Claims, and under the terms of the Settlement Agreement entered into by the parties on April 4, 2002, the parties stipulate to the dismissal of this action with prejudice, each side to bear its own costs.

Dated: April 30, 2002

Respectfully submitted,

Complaint dismissed pursuant to Rule 41(a)(1)(ii) this day.

Terry M. Petrie

TERRY M. PETRIE
Environment & Natural Resources Division
Department of Justice
999 18th Street
Suite 945, North Tower
Denver, Colorado 80202

Telephone: (303) 312-7355
Facsimile: (303) 312-7331

Attorney for Defendant

EXHIBIT
C

OF COUNSEL:
KAREN HAWBECKER
Office of the Solicitor
United States Department of the Interior

PAMELA PIECH
Office of the General Counsel
United States Department of Agriculture

MONTGOMERY & ANDREWS, P.A.

By [signature]
Sarah M. Singleton
Galen M. Buller
Andrew S. Montgomery
Post Office Box 2307
Santa Fe, New Mexico 87504-2307

Telephone: (505) 982-3873
Facsimile: (505) 982-4289

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

The undersigned certifies that this 3rd day of May 2002, copies of "Joint Stipulation of Dismissal" in the case of Richard P. Cook, et al., and Copar Pumice Company v. United States were served by placing copies in the United States mail, first-class postage prepaid, addressed to:

Sarah M. Singleton, Esq.
Andrew Montgomery, Esq.
Galen Buller, Esq.
Post Office Box 2307
Santa Fe, New Mexico 87504-2307

Lori Montano

I plicate Complaint
Original Mailed 2/6/2008

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

Form 1850-7
(June 1979)

Contest Number: NMNM 119839

CERTIFIED - RETURN RECEIPT REQUESTED

Deliver to Addressee Only

| | |
|---|---|
| UNITED STATES OF AMERICA | : Involving: Brown Placer Mining Claims |
| Contestant | |
| vs. | : No. 9 - NMMC 145310;<br>: No. 10 - NMMC 145311;<br>: No. 11 - NMMC 145312;<br>: No. 12 - NMMC 145313; |
| Kelly Armstong<br>Debbie Cantrup<br>Richard P. Cook<br>Shirley A. Cook | : situated within<br>: Section 1, T. 18 N., R. 3 E., and<br>: Section 6, T. 18 N., R. 4 E., NMPM |
| Contestees | |

COMPLAINT
(Contest of Mining Claim)

In accordance with Title 43, Code of Federal Regulations, Part 4, the United States of America, acting by and through the State Director, Bureau of Land Management, Department of the Interior, and on behalf of the Regional Forester, Forest Service, Department of Agriculture, bring this contest against the contestees named above, and alleges:

1. The lands hereinafter described are public lands of the United States.

EXHIBIT
D

2. The contestant is informed and believes that the above-named contestees are the owners, or asserts the ownership, of the above-named unpatented mining claims. The contestant is also informed and believes that the contestees are the only parties of interest and that the contestees addresses are:

Kelly Armstrong
P.O. Box 38
Espanola, NM 87532-0038

Richard P. Cook
P.O. Box 38
Espanola, NM 87532-0038

Debbie Cantrup
P.O. Box 38
Espanola, NM 87532-0038

Shirley A. Cook
P.O. Box 38
Espanola, NM 87532-0038

The contestant is also informed and believes that the contestees are over the age of 21 years.

3. Said mining claims are situated in Sandoval County, State of New Mexico and further identified as follows:

| Name of Claim | Serial Number | Location Date | County Recordation |
|---|---|---|---|
| Brown Placer No. 9 | NMMC 145310 | March 4, 1988 | Book 216, Page 21-2 |
| Brown Placer No. 10 | NMMC 145311 | March 4, 1988 | Book 216, Page 18-2 |
| Brown Placer No. 11 | NMMC 145312 | March 4, 1988 | Book 216, Page 15-1 |
| Brown Placer No. 12 | NMMC 145313 | March 4, 1988 | Book 216, Page 12-1 |

The above identified mining claims are located within Lots 11-13, and 15, 16 and the SE¼SE¼ of Section 1, T. 18 N., R. 3 E.; and within Lots 7, 19, of Section 6, of T. 18 N., R. 4 E., NMPM.

4. So far as known to the contestant, there are no proceedings pending for the acquisition of title to, or an interest in, the above-described lands.

5. Contestant charges separately and collectively that:

1. "The mineral material found within the limits of the claims is not a valuable mineral deposit under Section 3 of the Act of July 23, 1955 (69 Stat. 367; 30 U.S.C. 601)."

2. "Minerals have not been found within the limits of the claims in sufficient quantities and/or qualities to constitute a valid discovery of a valuable mineral deposit." **See Castle v. Womble, 19 L.D. 455 (1894).**

WHEREFORE, Contestant requests that it be allowed to prove its allegations and that one, or both, of the following actions be taken, as indicated:

1. __ The mineral entry be canceled.

2. X Said mining claims be declared null and void.

---

NOTICE

This complaint is filed in the New Mexico State Office, Bureau of Land Management, 1474 Rodeo Road, Santa Fe, New Mexico 87505 and any papers pertaining thereto shall be sent to such office for service on the contestant. P.O. Box 27115, Santa Fe, NM 87502-0115 (Attention: NM 92200)

Unless contestees file an answer to the complaint in such office within 30 days after service of this notice and complaint, the allegations of the complaint will be taken as admitted and the case will be decided without a hearing. Any answer should be filed in accordance with Title 43, Code of Federal Regulations, Part 4, a copy of which is enclosed.

Dated this 5th day of February, 2008.

UNITED STATES OF AMERICA

BY Tony J. Herrell
Deputy State Director
Division of Minerals
Bureau of Land Management
Department of the Interior

1 Enclosure:
1-Title 43, CFR, Part 4 (4 pp)
cc:
United States Department of Interior
Field Solicitor
P. O. Box 1042
Santa Fe, NM 87504

United States Department of Agriculture
U. S. Forest Service
Southwest Region
Office of the General Counsel (Attention: Patricia Disert)
500 Gold Avenue, SW, Rm. 11016
Albuquerque, NM 87103

Michael A. Linden
Acting, Director Lands & Minerals
United States Department of Agriculture
Southwestern Region Regional Office
333 Broadway SE
Albuquerque, NM 87102

Mark E. Schwab, CME
Arizona Zone Geologist
2324 East McDowell Rd.
Phoenix, AZ 85006

bcc:
Administrative Law Judge
Hearing Division
405 S. Main Ste 400
Salt Lake City, UT 84111

Diane Tafoya
New Mexico Zone Geologist
United States Department of Agriculture
Southwestern Region Regional Office
333 Broadway SE
Albuquerque, NM 87102

Larry Gore
Cuba Ranger District
Santa Fe National Forest
P.O. Box 130
Cuba, NM 87013

David Sitzler
Assistant Field Manager, Multi-Resources
Bureau of Land Management
Rio Puerco Field Office
435 Montano Rd. NE
Albuquerque, NM 87107

WO (320), R. Haskins

complaint, the office in which the contest is pending, and a statement that upon failure to file an answer in such office within 30 days after the completion of publication of such notice, the allegations of the complaint will be taken as confessed. The published notice shall also contain a statement of the dates of publication.

(3) *Publication, mailing and posting of notice.* (i) Notice by publication shall be made by publishing notice at least once a week for 5 successive weeks in some newspaper of general circulation in the county in which the land in contest lies.

(ii) Within 15 days after the first publication of a notice, the contestant shall send a copy of the notice and the complaint by registered or certified mail, return receipt requested, to the contestee at his last known address and also to the contestee in care of the post office nearest the land. The return receipts shall be filed in the office in which the contest is pending.

(iii) A copy of the notice as published shall be posted in the office where the contest is pending and also in a conspicuous place upon the land involved. Such postings shall be made within 15 days after the first publication of the notice.

(c) *Proof of service.* (1) Proof of publication of the notice shall be made by filing in the office where the contest is pending a copy of the notice as published and the affidavit of the publisher or foreman of the newspaper publishing the same showing the publication of the notice in accordance with paragraph (b)(3) of this section.

(2) Proof of posting of the notice shall be by affidavit of the person who posted the notice on the land and by the certificate of the manager or the Director of the Bureau of Land Management as to posting in his office.

(3) Proof of the mailing of notice shall be by affidavit of the person who mailed the notice to which shall be attached the return receipt.

[36 FR 7186, Apr. 15, 1971, as amended at 68 FR 33803, June 5, 2003]

### §4.450-6 Answer to complaint.

Within 30 days after service of the complaint or after the last publication of the notice, the contestee must file in the office where the contest is pending an answer specifically meeting and responding to the allegations of the complaint, together with proof of service of a copy of the answer upon a contestant as provided in §4.450-5(b)(3). The answer shall contain or be accompanied by the address to which all notices or other papers shall be sent for service upon contestee.

### §4.450-7 Action by manager.

(a) If an answer is not filed as required, the allegations of the complaint will be taken as admitted by the contestee and the manager will decide the case without a hearing.

(b) If an answer is filed and unless all parties waive a hearing, the manager will refer the case to an administrative law judge upon determining that the elements of a private contest appear to have been established.

### §4.450-8 Amendment of answer.

At the hearing, any allegation not denied by the answer will be considered admitted. The administrative law judge may permit the answer to be amended after due notice to other parties and an opportunity to object.

### §4.451 Government contests.

### §4.451-1 How initiated.

The Government may initiate contests for any cause affecting the legality or validity of any entry or settlement or mining claim.

### §4.451-2 Proceedings in Government contests.

The proceedings in Government contests shall be governed by the rules relating to proceedings in private contests with the following exceptions:

(a) No corroboration shall be required of a Government complaint and the complaint need not be under oath.

(b) A Government contest complaint will not be insufficient and subject to dismissal for failure to name all parties interested, or for failure to serve every party who has been named.

(c) No filing fee or deposit toward reporter's fee shall be required of the Government.

(d) Any action required of the contestant may be taken by any authorized Government employee.

(e) The statements required by § 4.450-4(a) (5) and (6) need not be included in the complaint.

(f) No posting of notice of publication on the land in issue shall be required of the Government.

(g) Where service is by publication, the affidavits required by § 4.450-5(b)(1) need not be filed. The contestant shall file with the manager a statement of diligent search which shall state that the contestee could not be located after diligent search and inquiry, the last known address of the contestee and the detail of efforts and inquiries made to locate the party sought to be served. The diligent search shall be concluded not more than 15 days prior to the filing of the statement.

(h) In lieu of the requirements of § 4.450-5(b)(3)(ii) the contestant shall, as part of the diligent search before the publication or within 15 days after the first publication send a copy of the complaint by certified mail, return receipt requested, to the contestee at the last address of record. The return receipts shall be filed in the office in which the contest is pending.

(i) The affidavit required by § 4.450-5(c)(3) need not be filed.

(j) The provisions of paragraph (e) of § 4.450-4(e) shall be inapplicable.

### § 4.452 Proceedings before the administrative law judge.

### § 4.452-1 Prehearing conferences.

(a) The administrative law judge may in his discretion, on his own motion or on motion of one of the parties, or of the Bureau, direct the parties or their representatives to appear at a specified time and place for a prehearing conference to consider:

(1) The simplification of the issues,

(2) The necessity of amendments to the pleadings,

(3) The possibility of obtaining stipulations, admissions of facts and agreements to the introduction of documents,

(4) The limitation of the number of expert witnesses, and

(5) Such other matters as may aid in the disposition of the proceedings.

(b) The administrative law judge shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made as to any of the matters considered, and which limits the issues for hearing to those not disposed of by admission or agreements. Such order shall control the subsequent course of the proceedings before the administrative law judge unless modified for good cause, by subsequent order.

### § 4.452-2 Notice of hearing.

The administrative law judge shall fix a place and date for the hearing and notify all parties and the Bureau at least 30 days in advance of the date set, unless the parties and the Bureau request or consent to an earlier date. The notice shall include (a) the time, place, and nature of the hearing, (b) the legal authority and jurisdiction under which the hearing is to be held, and (c) the matters of fact and law asserted. All hearings held in connection with land selection appeals arising under the Alaska Native Claims Settlement Act, as amended, shall be conducted within the state of Alaska, unless the parties agree otherwise.

[47 FR 26392, June 18, 1982]

### § 4.452-3 Postponements.

(a) Postponements of hearings will not be allowed upon the request of any party or the Bureau except upon a showing of good cause and proper diligence. A request for a postponement must be served upon all parties to the proceeding and filed in the office of the administrative law judge at least 10 days prior to the date of the hearing. In no case will a request for postponement served or filed less than 10 days in advance of the hearing or made at the hearing be granted unless the party requesting it demonstrates that an extreme emergency occurred which could not have been anticipated and which justifies beyond question the granting of a postponement. In any such emergency, if time does not permit the filing of such request prior to the hearing, it may be made orally at the hearing.

(b) The request for a postponement must state in detail the reasons why a

USDA United States Department of Agriculture | Forest Service | Santa Fe National Forest | 1474 Rodeo Road
P.O. Box 1689
Santa Fe, New Mexico 87504-1689
505-438-7840 FAX 505-438-7834

File Code: 2810
Date: February 13, 2008

Kelly Armstrong
President
Copar Pumice Co.
P.O. Box 38
Espanola, NM 87532

Dear Ms. Armstrong:

The Santa Fe National Forest is suspending the processing of the El Cajete Plan of Operation (dated December 4, 2007) and the proposed El Cajete No. 2 Plan of Operation (dated January 16, 2008). The plans cannot be approved because the area is not open to location and entry under the 1872 mining law, in accordance with the Jemez National Recreation Area Act, which only allows mining operations on valid claims.

On February 5, 2008, the Bureau of Land Management issued a complaint contesting the validity of the subject Brown Placer Claims #9 through #12, because the mineral material found within the limits of the claims is not a valuable mineral deposit under Section 3 of the Act of July 23, 1955 (69 Stat. 367; 30 U.S.C. 601).

If you have any questions concerning this matter, please contact Larry Gore at 575/289-3264.

Sincerely,

for DANIEL J. JIRON
Forest Supervisor

cc: Holland Shepherd



EXHIBIT E

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**RICHARD P. COOK, *et al.*, and**
**COPAR PUMICE COMPANY,**

**Plaintiffs,**

**-vs-**

**No. 94-344L**
**Honorable Eric G. Bruggink**

**THE UNITED STATES,**

**Defendant.**

**MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR DAMAGES**

Plaintiffs submit this memorandum in support of their motion to enforce settlement agreement, and state:

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This case arose as a takings action under the Tucker Act, 28 U.S.C. § 1491. Plaintiffs alleged in their original complaint that Congress, in passing the Jemez National Recreation Area Act, 16 U.S.C. § 460jjj *et seq.* ("JNRAA") in 1993, deprived them of vested property rights without just compensation, in the mining claims they owned in Sandoval County, New Mexico. The JNRAA prohibited patents to be issued in that area after 1991.

Eventually, Plaintiffs moved for partial summary judgment with respect to four of their claims, Brown Placer Claims 9 through 12. This Court granted the motion. In the 1999 published opinion attached to the motion (Ex. A), this Court agreed with Plaintiffs, holding that (i) their patent application properly described a "locatable" mineral deposit under the Multiple Use Mining Act, contrary to the United States' contentions; and (ii) the enactment of the JNRAA

"destroyed" certain of Plaintiffs' property rights, and did so without compensation. Further litigation followed.

In 2002, Plaintiffs and the United States entered into a Settlement Agreement (the "Agreement," Mot., Ex. B). In that Agreement, the United States agreed to pay Plaintiffs approximately $3.9 million in "just compensation," including "all interest, attorney's fees and costs, and any other litigation expenses." (*Id.* at [1].) The purpose of the Agreement was to "fully and finally" settle "all claims in this action." (*Id.*) As part of that Agreement, the United States agreed that Plaintiffs would retain the Brown Placer Mining Claims 9 through 12 "as unpatented mining claims subject to all pertinent statutes and regulations." (*Id.* at 2.) The parties further agreed to "submit themselves to the continuing jurisdiction of [this Court], subject to applicable law, in the event, and for the sole purpose, of any proceedings to enforce this agreement." (*Id.*) As a result, a Joint Stipulation of Dismissal with Prejudice, stating that it was filed "under the terms" of the Agreement, was entered on May 6, 2002. (Mot., Ex. C.)

However, the United States Forest Service has recently filed a Contest Complaint contesting the validity of the same Brown Placer Claims 9 through 12, with the BLM. (Mot., Ex. D.) In that Complaint, the United States now seeks a determination that the Brown Placer Claims are "null and void," on grounds that the mineral material within the claims is not "a valuable mineral deposit" under applicable federal law (30 U.S.C. § 601), and do not exist in sufficient quantity or quality to comprise "a valid discovery of a valuable mineral deposit." (Ex. D, at 2-3.) The filing of the Contest Complaint constitutes a material breach of paragraph 3 of the Agreement and is flatly contrary to the Court's decision which explicitly finds the very same claims to be valid.

The United States has further breached the Agreement by ceasing all of Plaintiffs' mining operations on the claims, by refusing to process or extend the existing plan of operations for the El Cajete mine and by refusing to process a new plan of operations for the El Cajete No. 2 pumice mine on the grounds the claims are now "null and void." (*See* Ex. D, February 13, 2008 letter from Jiron to Armstrong.) As a consequence, Plaintiffs have and are continuing to suffer damages and are entitled to enforce the Settlement Agreement herein. Plaintiffs also seek damages for breach of the Agreement and the implied covenant of good faith and fair dealing. Finally, under well-established principles of contract interpretation, the Agreement permitted Plaintiffs to retain their mining claims, and no other construction of the Agreement would be either reasonable or tenable.

**ARGUMENT**

**I. THIS COURT HAS JURISDICTION TO ENFORCE THE TERMS OF THE SETTLEMENT AGREEMENT.**

It is elementary that a federal district court retains jurisdiction to enforce the terms of its orders and judgments. The same rule has been applied to authorize a district court to enforce the terms of settlement agreements which are referenced in a stipulated dismissal. *See Schaefer Fan Co., Inc. v. J & D Mfg,* 265 F.3d 1282, 1287 (Fed. Cir. 2001) (stipulated dismissal using the words "pursuant to a confidential settlement agreement" was enough to bring the agreement, which gave the parties specific rights of enforcement, within the terms of the dismissal itself); *Interspiro USA, Inc. v. Figgie Internat'l, Inc.,* 18 F.3d 927, 930 (Fed. Cir. 1994) (the words "pursuant to that [settlement] agreement" in a stipulated dismissal "was sufficient to incorporate the terms of the agreement," and "adequately manifested the court's intent to retain jurisdiction for the purpose of enforcing the agreement"). *McCall-Bey v. Franzen,* 777 F.2d 1178, 1182 (7th Cir. 1985) (dismissal pursuant to stipulation of the parties); *id.* at 1188-89. *See also Halderman*

*v. Pennhurst State School & Hosp.*, 901 F.2d 311, 317 (3d Cir. 1990); *Sherman v. Wellbrock*, 761 F.Supp. 1135, 1141 (D. N.J. 1991); *Jenkins v. Kansas City Missouri Sch. Dist.*, 516 F.3d 1074,1081-82 (8th Cir. 2008).

Here, the Court plainly retains the jurisdiction to enforce the terms of the Settlement Agreement. The Stipulated Order of Dismissal expressly states it is "pursuant to the Settlement Agreement," and the Settlement Agreement expressly states that "Plaintiffs and Defendant submit themselves to the continuing jurisdiction of the United States Court of Federal Claims, subject to applicable law, in the event, and for the sole purpose, of any proceedings to enforce this agreement." (Mot., Exs. C and D, at 2.) Under the authorities discussed above, such facts provide jurisdiction.

There is a line of cases holding that a federal court does not have jurisdiction to enforce a settlement agreement where the stipulation of dismissal does not reference the settlement agreement. Those cases are distinguishable, because the dismissal here references the Settlement Agreement which itself confers continuing jurisdiction for the purpose of enforcement proceedings. In *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994), the Supreme Court held that a district court retains jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees." The Supreme Court has also recognized that, "[w]ithout jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (internal quotation marks and citation omitted). The *Kokkonen* court set the standard for permitting a federal court to exercise ancillary jurisdiction to enforce settlement agreements:

> if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.

511 U.S. at 381.

However, as one court noted, *Kokkonen* "is silent as to what words a district court must use to incorporate a settlement agreement . . ." *Lucille v. City of Chicago,* 31 F.3d 546, 549 (7th Cir. 1994) (Cudahy, J., concurring). In construing that silence, numerous courts have concluded that even the most simple, bare-bones reference to a settlement agreement in a final order is sufficient to confer jurisdiction for enforcement purposes. *See, e.g., id.,* (an order which states that it "is entered in accordance with the Settlement Agreement which has been signed by all parties" satisfies the incorporation requirement: "It is not much of a stretch to construe 'entered in accordance with' as language of incorporation").

## II. PLAINTIFFS ARE ENTITLED TO RETAIN AND OPERATE MINES ON THEIR MINING CLAIMS.

At the outset, this Court also plainly has the authority to order the specific enforcement of settlement agreements. *See, e.g., Massie v. United States,* 166 F.3d 1184 (Fed. Cir. 1999) (enforcement of settlement agreement under Military Claims Act); *Taylor v. United States,* 73 Fed. Cl. 532 (2006) (enforcement of settlement agreement under Title VII for employment discrimination); *Westover v. United States,* 71 Fed. Cl. 635 (2006) (same).

Here, the parties plainly intended that Plaintiffs retain the mining claims and continue mining operations on the claims. The United States expressly promised in paragraph 3 of the Settlement Agreement that "plaintiffs will retain Brown Placer Mining Claim Nos. 9-12 as unpatented mining claims subject to all pertinent statutes and regulations." The parties further "acknowledge that Plaintiffs are prohibited from the disposal of the common variety pumice

produced from Brown Placer Mining Claims Nos. 9-12." The Agreement's prohibition of the removal of common variety pumice implicitly acknowledges that Plaintiffs are entitled to remove *uncommon* variety pumice from the claims. This language would be rendered meaningless under any other construction. *See Hills Materials Co. v. Rice,* 982 F.2d 514, 517 (Fed. Cir. 1992) (court is required to give meaning "to all parts of the contract," without rendering any provisions "insignificant or useless."); *Restatement (Second) of Contracts* § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). Consequently, Plaintiffs are entitled to an order directing the United States to comply with the Settlement Agreement and dismiss the contest proceedings. The Court should further direct the United States to immediately process Plaintiffs' application to extend the time period of the plan of operations for the El Cajete mine and its plan of operations for the El Cajete No. 2 mine.[1]

The Forest Service will undoubtedly argue that, while the Agreement allowed Plaintiffs to retain title to the unpatented mining claims, its retention was "subject to all pertinent statutes and regulations," one of which included regulations regarding contest proceedings. This position must be rejected for several reasons. First, it is irreconcilable with the government's specific promise that Plaintiffs were entitled to retain the mining claims. It is elementary that settlement agreements, like other contracts, should be interpreted to further the parties' intent. *See Norfolk S. Corp. v. Chevron, U.S.A., Inc.,* 371 F.3d 1285, 1289 (11th Cir. 2004) ("The best evidence of

[1] Previously on December 7, 2007, Plaintiffs submitted a request to extend the El Cajete mine plan of operations because the plan's 10 year period had expired. No new areas or operations were planned and all had been considered and approved under an existing environmental impact statement. On January 16, 2008, Plaintiffs submitted a plan of operations for the proposed El Cajete No. 2 mine which was also located on the claims.

[the parties'] intent is, of course, the settlement agreement itself," as interpreted "according to traditional principles of contract law").

Second, it is elementary that general language in a contract cannot be used to contradict or destroy specific language in a contract. *Hills Materials Co., supra,* 982 F.2d at 517 (specific terms control over more general language); *Restatement, supra,* § 203(c) ("specific terms and exact terms are given greater weight than general language"). Therefore, the general language regarding "subject to all pertinent statutes and regulations" cannot be used to contradict or defeat the very specific language which authorizes Plaintiffs to retain the claims and to remove uncommon variety pumice.

The United States' position must be rejected for additional reasons. All government contracts include an implied covenant of good faith and fair dealing. *Centex Corp. v. United States*, 49 Fed. Cl. 691 (2001). The obligation of good faith and fair dealing extends to the negotiation, performance, interpretation and the enforcement of contracts. (*Id.*); *Restatement (Second) of Contracts*, § 205. Each party is entitled to receive the benefits of the contract and one party may not deprive the other of its benefits. *National Australia Bank v. United States*, 55 Fed. Cl. 782, 790 (2003). In particular, the government may not use its power as the sovereign to eradicate the legitimate expectations of the other contracting party, as this would render the promises of the government illusory and meaningless. (*Id.*)

Here, the government, by initiating the mining claim contest proceedings and by refusing to recognize the validity of the claims, this Court's prior decision and the terms of the Agreement, is using its power to deprive Plaintiffs of its benefits under the Agreement. Indeed, the government is taking steps to appropriate the subject mining claims to itself. The government seeks a declaration that the claims are null and void, which would include being

void on the date of the Agreement. This would render its promises made illusory and meaningless.

## III. PLAINTIFFS ARE ENTITLED TO DAMAGES DUE TO THE UNITED STATES' BREACH OF THE SETTLEMENT AGREEMENT

Plaintiffs are entitled to damages caused by the United States' breach of the Settlement Agreement. Plaintiffs have already suffered damages due to the government's breaches of the Settlement Agreement which has resulted in the closure of pumice mine operations and the suspension of processing of Plaintiffs' application to extend the existing plan of operations and the processing of a new plan of operations for the El Cajete #2 mine. Accordingly, Plaintiffs seek damages for breach of the Settlement Agreement, including damages for breach of the implied covenant of good faith and fair dealing, and will request an evidentiary hearing on the damages issue. *See National Australia Bank, supra*, 55 Fed. Cl. at 790.

## CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to enforce the Settlement Agreement and to the extent necessary, to vacate the Joint Stipulation of Dismissal entered May 6, 2002, and to determine that Defendant the United States has materially breached its obligations under the Settlement Agreement. Plaintiffs request the Court to order Defendant United States to immediately withdraw or dismiss its complaint filed with the BLM on February 5, 2008, to cease and desist from challenging the validity of the Brown Placer Claims 9 through 12, to immediately process the plan of operations for the El Cajete mine and the El Cajete mine

No. 2, and to allow Plaintiffs to recommence mining operations, for their damages, costs and attorneys' fees, and for any further relief in their favor to which they are entitled.

Dated: April 29th, 2008.

Respectfully submitted,

COMEAU, MALDEGEN, TEMPLEMAN
& INDALL, LLP

By: ______________________
Joseph E. Manges
P.O. Box 669
Santa Fe, NM 87504-0669
(505) 982-4611
(505) 988-2987 (fax)
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on this 29th day of April 2008 I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, on:

Terry M. Petrie, Esq.
U. S. Department of Justice, ENRD
1961 Stout Street, 8th Floor
Denver, CO 80294

Patricia Disert, Esq.
Office of the General Counsel
United States Department of Agriculture
U.S. Forest Service
500 Gold Avenue, SW, Room 11016
Albuquerque, NM 87103

______________________
Joseph E. Manges