IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RICHARD P. COOK, et al. and COPAR PUMICE COMPANY, | ) |
| Plaintiffs, | ) |
| v. | ) No. 08-337C |
| | ) (Senior Judge Bruggink) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF JURISDICTION**

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

Of counsel:
Patricia Leigh Disert
Office of the General Counsel
U.S. Department of Agriculture
Albuquerque, NM

MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

August 26, 2008

Counsel for Defendant

**TABLE OF CONTENTS**


TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . iii

DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF JURISDICTION . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . 3

A. Statutory And Regulatory Background . . . . . . . . . . 3

1. Mining Law of 1872 . . . . . . . . . . 3

2. Common Varieties Act of 1955 . . . . . . . . . . 4

3. Jemez National Recreation Area Act of 1993 . . . . . . . . . . 6

B. Procedural Background And Plaintiffs' New Complaint . . . . . . . . . . 6

1. Plaintiffs' Mining Claims . . . . . . . . . . 6

2. Prior Administrative and Judicial Proceedings . . . . . . . . . . 7

3. Pending Administrative Proceedings . . . . . . . . . . 10

4. Cook's Complaint In The Above-Captioned Case . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . 12

I. The Doctrine Of Res Judicata Bars Cook's Complaint . . . . . . . . . . 12

II. Because The Plain Language Of The Settlement Agreement Precludes Cook's New Claims, Cook's Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A. Cook Ignores The Fundamental Distinction Between Patented And Unpatented Mining Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B. The Department Of Interior Has Continuing Authority To Review The Validity Of Cook's Unpatented Mining Claims . . . . . . . . . . . . . . . . . . . . 21

C. Cook's Interpretation Of The Settlement Agreement Cannot Be Sustained . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III. In The Alternative, To The Extent Plaintiffs' Complaint Primarily Seeks Equitable Relief, It Should Be Dismissed Under RCFC 12(b)(1) For Lack Of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

## CASES

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . 26

Bell Atlantic Corp. v. Twombly,
- U.S. -, 127 S. Ct. 1955 (2007) . . . . . . . . . . 17

Best v. Humboldt Placer Mining Co.,
371 U.S. 334 (1963) . . . . . . . . . . 22

Blaze Constr., Inc. v. United States,
27 Fed. Cl. 646 (1993) . . . . . . . . . . 17

Bobula v. United States Dep't of Justice,
970 F.2d 854 (Fed. Cir. 1992) . . . . . . . . . . 29

Brown v. United States,
105 F.3d 621 (Fed. Cir. 1997) . . . . . . . . . . 29

Cal. Coastal Comm'n v. Granite Rock Co.,
480 U.S. 572 (1987) . . . . . . . . . . 3

Cameron v. United States,
252 U.S. 450 (1920) . . . . . . . . . . 19, 20, 22, 23

Castle v. Womble,
19 L.D. 455 (1894) . . . . . . . . . . 10

Chambers v. Harrington,
111 U.S. 350 (1884) . . . . . . . . . . 4

Chisolm v. United States,
82 Fed. Cl. 185 (2008) . . . . . . . . . . 13

Chrisman v. Miller,
197 U.S. 313 (1905) . . . . . . . . . . 3

Cook v. United States,
37 Fed. Cl. 435 (1997) . . . . . . . . . . 2, 7

Cook v. United States,
42 Fed. Cl. 788 (1999) . . . . . . . . . . 2, 6, 7

Copar Pumice Co. v. Bosworth,
502 F. Supp. 2d 1200 (2007) . . . . . . . . . . passim

Dachman v. United States,
73 Fed. Cl. 508 (2006) . . . . . . . . . . 13

Detroit Housing Corp., v. United States,
55 Fed. Cl. 410 (2003) . . . . . . . . . . 27

Doe v. United States,
372 F.3d 1308 (Fed. Cir. 2004) . . . . . . . . . . 29

Eastport Steamship Corp. v. United States,
732 F.2d 1002 (Ct. Cl. 1976) . . . . . . . . . . 28

Essex Electro Eng'rs, Inc. v. United States,
2008 WL 782740 (Fed. Cl. Feb. 20, 2008) . . . . . . . . . . 18

First Hartford Corp. Pension Plan & Trust v. United States,
194 F.3d 1279 (Fed. Cir. 1999) . . . . . . . . . . 29

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir.1985) . . . . . . . . . . 18

Franklin Savings Corp. v. United States,
56 Fed. Cl. 720 (2003) . . . . . . . . . . 16

Freese v. United States,
639 F.2d 754 (Ct. Cl. 1981) . . . . . . . . . . 3

Gavin v. United States,
47 Fed. Cl. 486 (2000) . . . . . . . . . . 17

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . 17

Griswold v. United States,
61 Fed. Cl. 458 (2004) . . . . . . . . . . 29

Grumman Data Sys. Corp. v. Dalton,
88 F.3d 990 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Harris v. Dep't of Veterans Affairs,
142 F.3d 1463 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Hunt v. United States,
52 Fed. Cl. 810 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ideal Basic Indus., Inc. v. Morton,
542 F.2d 1364 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Kunkes v. United States,
78 F.3d 1549 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lowe v. United States,
79 Fed. Cl. 218 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Lyons v. United States,
45 Fed. Cl. 399 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Magnus Electr., Inc. v. La Republica Argentina,
830 F.2d 1396 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Manning v. United States,
146 F.3d 808 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Maxima Corp. v. United States,
847 F.2d 1549 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

McClarty v. Sec'y of the Interior,
408 F.2d 907 (9th Cir.1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Michigan Land & Lumber Co. v. Rust,
168 U.S. 589 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

Montana v. United States,
440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Montego Bay Imports, Ltd. v. United States,
25 Cl. Ct. 639, 648-49 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Morgan v. United States,
298 U.S. 468 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mother's Rest., Inc. v. Mama's Pizza, Inc.,
723 F.2d 1566 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nat'l Steel & Shipbuilding Co. v. United States,
419 F.2d 863 (Ct. Cl. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Naylor v. United States,
53 Fed. Cl. 172 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,
170 F.3d 1373 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pratt v. United States,
50 Fed. Cl. 469 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

S. Pac. R.R. Co. v. United States,
168 U.S. 1, 48-49 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

SSIH Equipment S.A. v. United States Int'l Trade Comm'n,
718 F.2d 365 (Fed. Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

S. Utah Wilderness Alliance v. Bureau of Land Mgmt.,
425 F.3d 735 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Schade v. Andrus,
638 F.2d 122 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,
242 F.3d 1337 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Shearin v. United States,
992 F.2d 1195 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Spezzaferro v. FAA,
807 F.2d 169 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

State of Alaska v. United States,
35 Fed. Cl. 685, 704 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Swanson v. Babbitt,
3 F.3d 1348 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Torncello v. United States,
231 Ct. Cl. 20, 47 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Transclean Corp. v. Jiffy Lube Int'l Inc.,
474 F.3d 1298 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Armstrong,
NMNM 97937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Dunbar Stone Co.,
56 IBLA 61 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Fennell,
381 F. Supp. 2d 1300 (D.N.M. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Locke,
471 U.S. 84 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20

United States v. McPhilomy,
270 F.3d 1302 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Multiple Use, Inc.,
120 IBLA 63, 1991 WL 229932 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

United States v. Stacey,
171 IBLA 170 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Utah Constr. & Mining Co.,
384 U.S. 394 (1996) . . . . . . . . . . 22

West v. Standard Oil Co.,
278 U.S. 200 (1929) . . . . . . . . . . 23

Wilbur v. United States ex rel. Krushnic,
280 U.S. 306 (1930) . . . . . . . . . . 3

**STATUTES & REGULATIONS**

36 C.F.R. § 228.1 . . . . . . . . . . 24

36 C.F.R. 228.2 . . . . . . . . . . 7

36 C.F.R. § 228.41(c) . . . . . . . . . . 4, 5

36 C.F.R. 251.82 . . . . . . . . . . 25

43 C.F.R. § 4.451-1 . . . . . . . . . . 23

43 CFR § 3809.101 . . . . . . . . . . 24

16 U.S.C. § 460jjj-2(b) . . . . . . . . . . 2

16 U.S.C. § 460jjj-2(b) . . . . . . . . . . 6, 8

28 U.S.C. § 1491 . . . . . . . . . . 2, 28, 29

30 U.S.C. § 21-54 . . . . . . . . . . 24

30 U.S.C. §§ 22-42 . . . . . . . . . . 3

30 U.S.C. § 26 . . . . . . . . . . 19

30 U.S.C. § 29 . . . . . . . . . . 3

30 U.S.C. § 601 . . . . . . . . . . 10

30 U.S.C. § 611 . . . . . . . . . . 4

30 U.S.C. § 612(a) . . . . . . . . . . 3, 22

43 U.S.C. § 2 . . . . . . . . . . 21, 24

43 U.S.C. § 1457 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RICHARD P. COOK, et al. and COPAR PUMICE COMPANY, | ) |
| Plaintiffs, | ) |
| v. | ) No. 08-337C |
| | ) (Senior Judge Bruggink) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM AND FOR LACK OF JURISDICTION**

Pursuant to Rules 12(b)(6) and 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests this Court to dismiss the complaint in the above-captioned matter for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. In support of our motion, we rely upon plaintiffs' complaint, including the exhibits attached thereto, and our brief below.

**DEFENDANT'S BRIEF**

**QUESTIONS PRESENTED**

1. Whether plaintiffs' claims in this case are barred by the doctrine of res judicata due to the district court's decision in Copar Pumice Co. v. Bosworth, 502 F. Supp. 2d 1200 (2007)?
2. Whether plaintiffs fail to state a claim upon which relief can be granted because the terms of the settlement agreement at issue preclude plaintiffs' claims for breach of contract?
3. Whether plaintiffs' claims for injunctive or equitable relief should be dismissed for lack of jurisdiction?

## STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiffs, Richard P. Cook, et al., and Copar Pumice Co. (collectively, "Cook"), bring this action based upon a 2002 settlement agreement (the "Settlement Agreement" or "SA") between the Government and Cook that resolved his prior claims before this Court under the Tucker Act, 28 U.S.C. § 1491, for an uncompensated taking pursuant to the Fifth Amendment of the Constitution. In that prior litigation, this Court entered partial summary judgment for Cook, holding that he was entitled to compensation for the loss of his rights to patent and remove common variety materials from the so-called "Brown Placer Mining Claims 9-12" due to the Jemez National Recreation Area Act ("JNRAA"),16 U.S.C. § 460jjj-2(b).[1] See Cook v. United States, 37 Fed. Cl. 435 (1997) ("Cook I"); Cook v. United States, 42 Fed. Cl. 788 (1999) ("Cook II"). Thereafter, the parties entered into the aforementioned Settlement Agreement, providing "just compensation" to Cook for the taking of certain mineral rights, and defining what rights or claims Cook "retain[ed]." SA at ¶ 3. The parties subsequently filed, on May 6, 2002, a Joint Stipulation of Dismissal with Prejudice, and Cook's complaint was dismissed pursuant to RCFC 41(a)(1)(ii).

Despite the fact that plaintiffs were paid nearly $4 million to settle their previous suit, Cook now alleges that the United States breached the Settlement Agreement by depriving Cook of certain mining rights and claims that Cook indeed released in that agreement. In particular, pursuant to the Settlement Agreement, the United States compensated Cook for the loss of the

[1] The JNRAA governs Cook's mining claims on the Santa Fe National Forest, Jemez Ranger District, New Mexico.

right to patent, and for precluding the removal of common variety materials from, Cook's Brown Placer Mining Claims 9-12. More than six years after executing the Settlement Agreement, Cook now seeks to rewrite that agreement. Cook, however, already has litigated – and lost – the same arguments and theories Cook now advances before this Court. Finally, although Cook purports to seek unspecified monetary damages, Cook primarily asks this Court to award a variety of declaratory and injunctive relief that this Court does not have the power to issue.

## II. Statement Of Facts

### A. Statutory And Regulatory Background

#### 1. Mining Law of 1872

The Mining Law of 1872, 30 U.S.C. §§ 22-42 (the "Mining Law"), authorizes citizens to stake, or "locate," a valid mining claim upon "discovery" of a valuable mineral deposit and compliance with all other applicable statutory and regulatory requirements. Chrisman v. Miller, 197 U.S. 313, 320-21 (1905). A valid mining claim is "property within the fullest sense of that term; and may be sold, transferred, mortgaged, and inherited." Wilbur v. United States ex rel. Krushnic, 280 U.S. 306, 316 (1930). However, legal title to the public lands underlying the mining claim belongs to the United States, Cal. Coastal Comm'n v. Granite Rock Co., 480 U.S. 572, 575 (1987), unless and until the mining claimant obtains fee title, or "patent" to the public lands encompassed by the mining claim by submitting a patent application and complying with the extensive list of requirements set forth in the Mining Law. See 30 U.S.C. § 29; Freese v. United States, 639 F.2d 754, 756 (Ct. Cl. 1981).

A valid, **unpatented** mining claim gives the claimant use of surface lands to the extent reasonable and necessary for purposes of prospecting, mining, or processing operations. See 30

U.S.C. § 612(a). This right to develop and extract the minerals from the public lands in which the valuable mineral deposits are found is not absolute; rather, it continues only so long as the mining claimant complies with applicable statutes, regulations and satisfies certain "maintenance" requirements of the mining laws. See United States v. Locke, 471 U.S. 84, 99-100 (1985); Chambers v. Harrington, 111 U.S. 350, 353 (1884); Bosworth, 502 F. Supp. 2d at 1202 (explaining that, with respect to an unpatented mining claim, "title to the land where the mining claim is located remains with the Government, but the severed minerals and proceeds are the personal property of the miner").

2. Common Varieties Act of 1955

In 1955, Congress removed certain "common variety" minerals from the possibility of location under the Mining Law. See 30 U.S.C. § 611 ("No deposit of common varieties of sand, stone, gravel, pumice, pumicite, or cinders . . . shall be deemed a valuable mineral deposit within the meaning of the mining laws of the United States so as to give effective validity to any mining claim hereafter located under such mining laws."). Thus, except for mining claims that were valid as of the date of the Common Varieties Act, the Government is required to dispose of common variety minerals through sales contracts, rather than through mining claim location and patenting under the Mining Law. See 30 U.S.C. § 611; 36 C.F.R. § 228.41(c); Bosworth, 502 F. Supp. 2d at 1204.

On the other hand, the Common Varieties Act specifically excluded from its coverage "deposits of such materials which are valuable because the deposit has some property giving it distinct and special value" – referred to as "uncommon variety minerals." 30 U.S.C. § 611; Bosworth, 502 F. Supp. 2d at 1204-05 (discussing 30 U.S.C. § 611 and implementing

regulations); see also United States v. Multiple Use, Inc., 120 IBLA 63, 77, 1991 WL 229932 (I.B.L.A. July 15, 1991). Accordingly, deposits containing uncommon variety minerals remain locatable under the Mining Law. See Bosworth, 502 F. Supp. 2d at 1205 (explaining that, pursuant to 36 C.F.R. § 228.41(e), a particular "'use' . . . could transform a common variety mineral into an uncommon variety"); 120 IBLA at 77. The Government can verify the locatability of these otherwise common variety minerals by conducting a mineral examination and economic analysis. Id. at 81. If the Bureau of Land Management ("BLM") determines that the material is not locatable, based upon the results of a validity examination, BLM may file an administrative contest proceeding before the Department of the Interior ("Interior") to challenge the validity of the claims. 120 IBLA at 82-83. Interior's verification and determination of validity is made as of a specific date,[2] and a determination that a mineral is an "uncommon variety" and subject to location requires the mining claimant to meet a number of prerequisites. Id. at 77-78 (citing McClarty v. Sec'y of the Interior, 408 F.2d 907 (9th Cir.1969)); see also United States v. Dunbar Stone Co., 56 IBLA 61 (1981).

---

[2] Accordingly, uncommon variety materials may lose their status if the market or technology changes. See, e.g., 120 IBLA at 94 ("Although it may be true that at one point in time the claims contained pumice suitable for the manufacture of pozzolonic agents, the subsequent change in market conditions clearly supports a finding that the pumice is no longer an uncommon variety because of its pozzolonic qualities."); Bosworth, 502 F. Supp. 2d at 1210 ("If a mineral which is initially described as locatable is not being used in a manner which excludes it from Subpart C regulations, then it is fair to say that its use as a common variety mineral renders it subject to those regulations."); id. at 1212 (discussing Multiple Use, 120 IBLA at 125, and concurring with agency's view "that once the pumice is initially classified, its locatability is not fixed, but remains dependent on those characteristics which render it locatable").

3. Jemez National Recreation Area Act of 1993

On October 12, 1993, Congress enacted the Jemez National Recreation Area Act ("JNRAA"). See 16 U.S.C. § 460jjj-2(b). Section 3(a)(1) of the JNRAA provided that "[n]otwithstanding any other provision of law, no patents shall be issued after May 30, 1991, for any location or claim made in the recreation area under the mining laws of the United States." Id. In addition, the JNRAA provided that "[s]ubject to valid existing rights, after October 12, 1993, lands within the recreation area [are] withdrawn from location under the general mining laws and from the operation of the mineral leasing, geothermal leasing, and mineral material disposal laws." Id.

The effect of this language was to prohibit patenting of any mining claim within the JNRAA after May 30, 1991. See Bosworth, 502 F. Supp. 2d at 1204; Cook II, 42 Fed. Cl. at 789. Mining claimants, however, could continue to hold their mining claims as unpatented claims, if the claims qualified as valid existing rights and were thereafter properly maintained consistent with applicable laws and regulations. 502 F. Supp. 2d at 1205.

B. Procedural Background And Plaintiffs' New Complaint

1. Plaintiffs' Mining Claims

In 1988, Cook located the Brown Placer Mining Claims on lands managed by the Santa Fe National Forest. Bosworth, 502 F. Supp. 2d at 1204. On September 29, 1989, Cook filed a patent application for twenty-three placer mining claims (i.e., the Brown Placer Mining Claims) for a type of pumice determined to be an uncommon variety mineral because, at that time, it had a distinct and special value to the garment finishing industry for stonewashing blue jeans. See 502 F. Supp. 2d at 1207-08; Cook II, 42 Fed. Cl. at 788-89; see also United States v. Multiple

Use, Inc., 120 IBLA 63, 77 (1991); United States v. Armstrong, NMNM 97937 (Interior Office of Hearings and Appeals Aug. 18, 1999) (validity contest) (discussed in Bosworth, 502 F. Supp. 2d at 1213-14). In the ensuing validity contest, Interior concluded that 19 of the 23 claims were invalid, leaving 4 claims – Brown Placer Mining Claims 9-12 – as valid for the location of stonewash pumice as of 1991. Armstrong, NMNM 97937 (discussed in Bosworth, 502 F. Supp. 2d at 1213-14); 42 Fed. Cl. at 788-89.[3] In 1993, however, the JNRAA prohibited Cook from patenting the mining claims and removing common variety materials therefrom. Bosworth, 502 F. Supp. 2d at 1205; 42 Fed. Cl. at 788-89.

2. Prior Administrative and Judicial Proceedings

In 1994, Cook filed an action in this Court, claiming that the JNRAA resulted in an uncompensated taking of the right to patent and to remove common variety minerals from the Brown Placer Mining Claims. Cook I, 37 Fed. Cl. 435. This Court concluded that Cook "had a vested property interest and the JNRAA could not, consistent with the Fifth Amendment, eliminate that vested property interest without providing just compensation." Id. at 446; see also Cook II, 42 Fed. Cl. 788. In particular, this Court held that the JNRAA effected a taking of: (1) Cook's right to patent the Brown Placer Mining Claims 9-12; and (2) Cook's right to remove common variety minerals from the claims. Id. at 789.

[3] In 1997, the Forest Service approved a mining plan of operations ("plan" or "mining plan") for El Cajete Mine, located on Brown Placer Mining Claims 9-12, thereby authorizing the mining of uncommon variety pumice based upon Interior's decision in United States v. Multiple Use, 120 IBLA 63 (1991). See Bosworth, 502 F. Supp. 2d at 1205-1209 (discussing 36 C.F.R. § 228.2 Subpart A, and explaining that the "regulations include requirements for how mining operations are to be conducted, including the submission and approval of a 'plan of operations' for any mining activity").

Following Cook II, on April 4, 2002, the United States and Cook executed the Settlement Agreement. Under the terms of the Settlement Agreement, the United States paid Cook $3,911,831.00 in compensation for Cook's loss of rights to patent and to remove common variety material from Brown Placer Mining Claims 9-12, which claims were held valid for pumice used in the stonewash market. See SA at ¶ 3 (attached to Plaintiffs' Complaint at Exhibit B); Bosworth, 502 F. Supp. 2d at 1213-15 (discussing Armstrong, NMNM 97937 (1999), amongst other cases, and affirming "agency's position that all pumice extracted from El Cajete mine must be sold to the stonewash industry to be considered locatable and of uncommon variety"). Cook, in turn, agreed to "relinquish the Brown Placer Mining Claims Nos. 1-8, 17-22, 41-44, and 83." SA at ¶ 3. As to Brown Placer Mining Claims Nos. 9-12, the parties agreed that Cook would "retain . . . unpatented mining claims subject to all pertinent statutes and regulations." Id. Finally, the Settlement Agreement provided "that Plaintiffs are prohibited from the disposal of . . . common variety pumice produced from Brown Placer Mining Claims Nos. 9-12 pursuant to 16 U.S.C. § 460jjj-2(b)." Id.

On February 3, 2006, Copar Pumice Co. – one of the plaintiffs in this case[4] – filed an action in the United States District Court for the District of New Mexico, challenging various administrative decisions issued by the Forest Service. Bosworth, 502 F. Supp. 2d at 1203. In particular, Copar challenged the Forest Service's issuance of a Notice of Noncompliance (the "Notice"), in which the agency "held that Copar may not remove 'locatable,' uncommon variety pumice and subsequently sell it for 'common variety' purposes." Id. at 1206. The Notice "also

[4] See 502 F. Supp. 2d at 1205 (noting that "Copar is a family business owned by Richard Cook and his family" – the other plaintiffs in the above-captioned case).

included a finding that damage to surface resources was being caused by [Copar's] removal of pumice in excess of what it was supposed to be selling to the stonewash laundry industry market." Id.

In challenging the Forest Service's Notice, Copar argued that it was "not in violation of any federal statute or regulation." Id. at 1207. In particular, Copar asserted that "the initial classification of the mine as containing locatable pumice should summarily dispose of the issue. . . ." Id. at 1208. The Government, on the other hand, "contend[ed] that locatability of the mineral is not fixed, that classification of a mineral is subject to change if the regulatory requirements determining locatability are not met, and that it is the agency's call to make this determination." Id. The Government also argued that Copar's mining operations were in violation of the Settlement Agreement at issue in the above-captioned case. Id. at 1209.

The district court rejected Copar's arguments, affirmed the agency's position, and entered judgment for the Government. Id. at 1215, 1220 (noting that "Copar does not dispute that . . . it sells some of the pumice . . . for common variety purposes" and holding that "the Forest Service can require an accounting of the end use of all pumice mined from El Cajete, based on its interpretation of federal law"). In so holding, the district court also concluded that the Forest Service possesses the power, under applicable regulations, to oversee and to "monitor[] Copar's mining activities to make sure that it was not mining common variety pumice, as provided in the Settlement Agreement, and as prohibited by federal law under the JNRAA." Id. at 1216.

Moreover, the district court concluded that "[t]here are no restrictions on when or how often a mineral examination may be conducted." Id. The district court also rejected Copar's

claim that the agency was violating Copar's property rights in light of the fact that "Copar has no right to extract the pumice" under the agency's interpretation and application of its regulations. Id. at 1216-17. Finally, the district court held that the Forest Service's Notice did not constitute an impermissible collateral attack on earlier decisions, including the "Cooks' takings case[s]" in Cook I and Cook II. Id. at 1217. Indeed, the district court concurred with the agency, that "under the agency's interpretation of its regulations, Copar is violating not only federal law by extracting locatable pumice and selling it for common variety purposes, but also [is] violating the spirit and mandate of the Settlement Agreement entered into by the parties." Id. at 1219 (emphasis added); see also id. at 1215 (affirming "agency's position that all pumice extracted from El Cajete mine must be sold to the stonewash laundry industry to be considered locatable and of uncommon variety").

Bosworth currently is on appeal before the United States Court of Appeals for the Tenth Circuit (No. 07-2211), but was stayed by order of that court on March 10, 2008.

3. Pending Administrative Proceedings

On February 5, 2008, BLM instituted an administrative contest proceeding before Interior's Office of Hearing and Appeals (OHA) by filing a contest complaint against the remaining Brown Placer Mining Claims. See Plaintiffs' Complaint at ¶ 7 & Exhibit D. BLM's complaint alleges that: (1) the mineral material found within the limits of the claims is not a valuable mineral deposit under 30 U.S.C. § 601; and (2) minerals have not been found within the limits of the claims in sufficient quantities and/or qualities to constitute a valid discovery of a valuable mineral deposit. See Plaintiffs' Complaint at Exhibit D (citing Castle v. Womble, 19 L.D. 455 (1894)). The contest complaint seeks to have the mineral entry canceled for the Brown

Placer Mining Claims and those claims declared null and void as of the date of the current validity examination. Id.

On June 9, 2008, OHA granted Cook's motion to stay the contest proceeding pending the outcome of this case. On February 13, 2008, the Forest Supervisor for the Santa Fe National Forest notified Cook that the Forest Service was suspending review of the proposed mining plans pending the outcome of the BLM validity contest regarding Brown Placer Mining Claims. See Plaintiffs' Complaint at ¶ 7 and Exhibit E.

4. Cook's Complaint In The Above-Captioned Case

On April 29, 2008, Cook filed a "Motion to Enforce Settlement Agreement and for Damages" with this Court. On May 6, 2008, this Court issued an order directing the Clerk to "treat the motion as a complaint in a new proceeding with a new docket number, without prejudice to the plaintiff's rights, if any, to argue that the court retained jurisdiction to enforce the agreement." In particular, Cook now alleges that the United States breached its obligations under the Settlement Agreement by BLM's filing of the current validity contest. Plaintiffs' Complaint at ¶ 7. Cook also alleges that the United States breached its obligations under the Settlement Agreement by suspending the review of Cook's new mining plans during the pendency of the contest proceeding. Id. at ¶ 8.

In addition to seeking unspecified damages for breach of the Settlement Agreement, Cook asks this Court to order various forms of equitable relief, including: (1) to enforce the Settlement Agreement; (2) to vacate the May 6, 2002 Joint Stipulation of Dismissal with Prejudice and to reopen the prior proceeding; (3) to order the United States to withdraw or dismiss the contest complaint pending before Interior; (4) to order the United States to cease and

desist from challenging the validity of Brown Placer Mining Claims 9-12; (5) to order the United States to process Cook's proposed mining operation plans; and (6) to order the United States to allow Cook to resume mining operations.

**ARGUMENT**

Cook's new complaint in this Court is nothing more than an attempt to relitigate the case Cook lost before the district court in Bosworth. Accordingly, this new case should be dismissed pursuant to fundamental principles of res judicata. Moreover, as part of the Settlement Agreement at issue here, Cook relinquished the very claims now asserted in this case. Because the plain language of that agreement is not in dispute – and, indeed, is incorporated in Cook's complaint – and because the claims release contained therein covers Cook's new claim for damages, Cook's complaint in the instant case must be dismissed for failure to state a claim upon which relief may be granted. In the alternative, this Court lacks jurisdiction over Cook's complaint to the extent it primarily seeks injunctive or other equitable relief that is beyond the power of this Court to award.

I. The Doctrine Of Res Judicata Bars Cook's Complaint

In Bosworth, 502 F. Supp. 2d at 1216, the district court explained that "Copar essentially argues for a hands-off relationship between itself and the Forest Service once pumice at the El Cajete mine was deemed valuable, precluding any inspection or oversight of mining operations by the agency." Because the district court flatly rejected that argument as "hav[ing] no merit[,]" id. (emphasis added), Cook's attempted second-bite at the apple in this Court is barred by "both

variants of res judicata – claim preclusion and issue preclusion (also known as collateral estoppel)" and thus should be dismissed pursuant either to RCFC 12(b)(1) or RCFC 12(b)(6).[5]

The doctrine of claim preclusion "'provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy . . . .'" Montego Bay Imports, Ltd. v. United States, 25 Cl. Ct. 639, 648-49 (1992) (quoting Magnus Electr., Inc. v. La Republica Argentina, 830 F.2d 1396, 1400 (7th Cir. 1987) (internal quotes omitted)). The doctrine is used to "strengthen judgments and accord legitimacy to this nation's judicial system." Lyons v. U.S., 45 Fed. Cl. at 402. Courts routinely use res judicata to "bar litigation in a second action where the matter has previously been adjudicated upon the merits." Id.; see also Dachman v. United States, 73 Fed. Cl. 508, 522 (2006).

A finding of claim preclusion requires that: "(1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim or cause of action as in the prior decision, (3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both cases." Lyons, 45 Fed. Cl. at 403. Cook is precluded from relitigating the claims in its new complaint before this Court because all four elements of claim preclusion are satisfied.

First, the district court in Bosworth issued a valid and final judgment on the merits. See 502 F. Supp. 2d at 1220. Second, this case involves the same claim that was at issue in the district court case: whether the Government is somehow prohibited from conducting a new

---

[5] Chisolm v. United States, 82 Fed. Cl. 185, 192-94 (2008). A claim preclusion defense properly is presented as a motion to dismiss pursuant to RCFC 12(b)(6). See Lyons v. United States, 45 Fed. Cl. 399, 402 (1999); but see Lowe v. United States, 79 Fed. Cl. 218, 228 (2007) ("It is beyond cavil that the issue of collateral estoppel goes to subject matter jurisdiction, and may be pleaded as a 12(b)(1) motion."); 82 Fed. Cl. at 194.

mineral examination and from preventing Copar from "extracting locatable pumice and selling it for common variety purposes" in violation of "the spirit and mandate of the Settlement Agreement." Id. at 1219; see Transclean Corp. v. Jiffy Lube Int'l Inc., 474 F.3d 1298, 1304-05 (Fed. Cir. 2007) ("Two suits are based on the same cause of action if they arise out of the same nucleus of operative facts."). Finally, Copar Pumice Co., Inc. – owned by Richard P. Cook and his family – was the plaintiff in Bosworth, just as in this case. 474 F.3d at 1305 (noting "privity" is sufficient "for claim preclusion purposes").

The district court rejected the identical arguments Cook now makes before this Court. In particular, the district court held: (1) that the Forest Service possesses the power, under applicable regulations, to oversee and to "monitor[] Copar's mining activities to make sure that it was not mining common variety pumice, as provided in the Settlement Agreement, and as prohibited by federal law under the JNRAA" (502 F. Supp. 2d at 1216); (2) that "under the agency's interpretation of its regulations, Copar is violating not only federal law by extracting locatable pumice and selling it for common variety purposes, but also [is] violating the spirit and mandate of the Settlement Agreement entered into by the parties" (id. at 1219 (emphasis added)); and (3) that "all pumice extracted from El Cajete mine must be sold to the stonewash laundry industry to be considered locatable and of uncommon variety" (id. at 1215). Accordingly, Cook's identical arguments to the contrary before this Court are barred by the doctrine of claim preclusion and should be dismissed.

Under issue preclusion, or collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v.

United States, 440 U.S. 147, 153 (1979). In Hunt v. United States, this Court explained that "[t]he Federal Circuit has established four essential requirements for applying collateral estoppel or issue preclusion: (1) the issues to be concluded are identical to those involved in the prior action; (2) those issues were raised and 'actually litigated'; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully represented in the prior action." 52 Fed. Cl. 810, 814 (2002) (citing Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983)).

As explained above, the issues raised by Cook's new complaint in this case were present and fully litigated in Bosworth, and were necessary to that judgment. Indeed, the district court upheld the Forest Service's actions in part due to its consideration of the "Settlement Agreement wherein Copar agreed to not sell common variety pumice." Id. at 1219. Finally, Copar was represented by counsel in Bosworth. Id. at 1203 (noting that Copar was represented by three attorneys). Accordingly, Cook should be barred under the doctrine of issue preclusion from relitigating the same issues here that were decided by the district court in Bosworth.

Finally, we note that "[w]hile these two doctrines and their terminology are often blurred together, they prevent parties from 'getting two bites at the apple' through re-litigating rather than appealing a decision through the appropriate channels." Lowe, 79 Fed. Cl. at 228-29. Granting judgments preclusive effect upholds a "fundamental precept of common-law adjudication," that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties . . . ." Montana v. United States, 440 U.S. at 153 (quoting S. Pac. R.R. Co. v. United States, 168 U.S. 1, 48-49 (1897)).

In sum, the underlying rationale for the doctrine of res judicata is "to encourage reliance on judicial decisions, prevent vexatious litigation, and permit courts to resolve other pending suits being litigated for the first time." Montego Bay Imports, 25 Cl. Ct. at 649. That logic applies with full force when, as in this case, the facts and claim presented in Cook's complaint before this Court are identical to those raised in the same claim litigated before the district court. As such, Cook has had a full and fair opportunity to litigate what the district court found to be lawful action on the part of the Government, consistent with the Settlement Agreement, and Cook should be barred from relitigating that cause of action as a contract claim before this Court. See Montego Bay Imports, 25 Cl. Ct. at 650 (res judicata prevented plaintiff from establishing subject matter jurisdiction under the Tucker Act when a court previously had held plaintiff's claim sounded in tort); Franklin Savings Corp. v. United States, 56 Fed. Cl. 720, 738 (2003) (granting defendant summary judgment as to plaintiff's breach of covenant of good faith and fair dealing claim when plaintiff simply had alleged issues previously adjudicated); Naylor v. United States, 53 Fed. Cl. 172, 176-77 (2002) (holding res judicata bars relitigation of identical claims when party had a full and fair opportunity to litigate the adjudicated claims).[6]

[6] Although Boswoth currently is on appeal before the Tenth Circuit, the Federal Circuit has held that "the law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding." Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc., 170 F.3d 1373, 1381 (Fed. Cir. 1999) (quoting SSIH Equipment S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 370 (Fed. Cir.1983) (citations omitted), and citing 18 Charles Alan Wright et al., Federal Practice and Procedure § 4433, at 308 (1981 & Supp.1998), for the proposition that "case law from the Supreme Court and from the Second, Fifth, Sixth, Seventh, Ninth, Eleventh, District of Columbia and Federal circuits" supports "that a final judgment retains its preclusive effect despite the pendency of an appeal").

II. Because The Plain Language Of The Settlement Agreement Precludes Cook's New Claims, Cook's Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted

RCFC 12(b)(6) "authorizes dismissal of a complaint if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law." Gavin v. United States, 47 Fed. Cl. 486, 489 (2000). In ruling upon a RCFC 12(b)(6) motion to dismiss, the Court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Blaze Constr., Inc. v. United States, 27 Fed. Cl. 646, 650 (1993). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, – U.S. –, 127 S. Ct. 1955, 1964, 1968-70 (2007) ("a wholly conclusory statement of claim" cannot "survive a motion to dismiss" simply "whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery").

In this case, Cook's complaint alleges that, pursuant to the Settlement Agreement, "plaintiffs will retain Brown Placer Mining Claims 9 through 12 as unpatented mining claims subject to all pertinent statutes and regulations." Plaintiffs' Complaint at ¶ 6 (emphasis added); see also SA at ¶ 3. That allegation alone is fatal to Cook's breach claim in this case, and precludes Cook's recovery of yet further sums – in addition to the nearly $4 million Cook received under the Settlement Agreement – from the United States. Indeed, in light of that provision of the Settlement Agreement, none of the Government's alleged actions with respect to the Brown Placer Mining Claims can constitute a breach of contract because all of those actions

arise out of the "pertinent statutes and regulations" to which all unpatented claims are subject.

We begin by noting that interpreting a government contract is a matter of law, and the plain language of the contract is controlling. See Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 996 (Fed. Cir. 1996) (citing Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed. Cir.1985)); see also Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998) ("We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning."). In addition, the Court "must interpret the contract in a manner that gives meaning to all of its provisions and makes sense." McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). The Settlement Agreement at issue here is a government contract subject to the foregoing interpretive principles of contract construction. See Essex Electro Eng'rs, Inc. v. United States, 2008 WL 782740, *6 (Fed. Cl. Feb. 20, 2008) (interpreting settlement agreement).

Cook points to two governmental actions that Cook alleges constitute a breach of the Settlement Agreement: (1) BLM's initiating an administrative contest proceeding; and (2) the Forest Service's suspension of review of Cook's mining plan. Plaintiffs' Complaint at ¶¶ 7-8; see also Plaintiffs' April 29, 2008 Memorandum In Support Of Motion To Enforce Settlement Agreement And For Damages ("Pl. Mem.") at 2-3. In sum, although the Settlement Agreement permitted Cook to continue to hold Brown Placer Mining Claims 9-12 only as "unpatented" mining claims – subject to all pertinent statutes and regulations – Cook nevertheless argues that he has some sort of vested property right in those claims, in perpetuity, without regard to continuing compliance with the Mining Law or other legal authority.

As discussed in more detail below (and as noted above), however, one of the basic

characteristics of a valid, but unpatented mining claim is the requirement of continued compliance with all applicable laws and regulations. Thus, for example, 30 U.S.C. § 26 provides that "[m]ining claimants, 'so long as they comply with the laws of the United States ... have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations' and of the valuable mineral deposits within their locations." United States v. McPhilomy, 270 F.3d 1302, 1308 n.4 (10th Cir. 2001) (emphasis added) (quoting 30 U.S.C. § 26). Moreover, among the "pertinent statutes and regulations" to which the Brown Placer Mining Claims are subject is the Forest Service's authority to manage the surface of mining claims under its regulations, in addition to Interior's authority to examine the ongoing validity of mining claims at any time. See, e.g., Michigan Land & Lumber Co. v. Rust, 168 U.S. 589, 593 (1897) ("[T]he power of the department to inquire into the extent and validity of the rights claimed against the Government does not cease until the legal title has passed."); Ideal Basic Indus., Inc. v. Morton, 542 F.2d 1364, 1367 (9th Cir. 1976) (acknowledging the Government's "continuing jurisdiction with respect to these lands until a patent issues"); Bosworth, 502 F. Supp. 2d at 1216.

### A. Cook Ignores The Fundamental Distinction Between Patented And Unpatented Mining Claims

Cook does not allege that he retains any patented or patentable mining claims. Instead, Cook alleges that the United States has breached the Settlement Agreement merely by filing an administrative contest proceeding to determine the validity of Cook's unpatented mining claims. Cook's complaint, in that regard, simply ignores the distinctions between a patented and unpatented mining claim.

In Kunkes v. United States, the Court of Appeals for the Federal Circuit explained the

distinction between the two types of claims:

> [F]ederal law permits private parties to acquire exclusive possessory interests in federal land for mining purposes, interests which entitle claim holders to extract and sell minerals without paying royalties to the Government. Title to the underlying fee simple estate in the land remains in the United States. These possessory mineral interests are known as "unpatented" claims to distinguish them from the ownership interest of the private owner who has obtained a "patent," that is, an official document issued by the United States attesting that fee title to the land is in the private owner.

78 F.3d 1549, 1551 (Fed. Cir. 1996) (citing United States v. Locke, 471 U.S. 84, 86 (1985)). Accordingly, plaintiffs in this case, "[a]s owners of unpatented mining claims, . . . are subject to the United States' regulatory powers." United States v. Fennell, 381 F. Supp. 2d 1300, 1311 (D.N.M. 2005) (citing Manning v. United States, 146 F.3d 808, 813-15 (10th Cir. 1998)). In particular, Cook's unpatented mining claims continue to be subject to the regulatory powers of the Government, including the Department of the Interior and the Forest Service. See, e.g., S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, (10th Cir. 2005) (discussing Cameron v. United States, 252 U.S. 450 (1920), and the "general statutory provisions giving the Land Department authority to rule on the validity of unpatented mining claims"); Bosworth, 502 F. Supp. 2d at 1208-09, 1216.

Cook's complaint fails to allege, however, that the United States has taken any action, with respect to Cook's unpatented mining claims, that is contrary to applicable mining laws and regulations. Accordingly, Cook's complaint fails to state a claim upon which relief can be granted because the Settlement Agreement explicitly provides that Cook retains only unpatented mining claims. In any event, as explained in more detail below, the Government's actions to date are entirely proper.

B. The Department Of Interior Has Continuing Authority To Review The Validity Of Cook's Unpatented Mining Claims

At the outset, we note once again that the district court already has affirmed the Government's power both to investigate whether Cook's unpatented mining claims remain valid and locatable, and to contest those claims if necessary. See Bosworth, 502 F. Supp. 2d at 1216-20. While the district court's decision, under principles of res judicata, should be binding in this case, the law, in any event, is clear that Cook's mining claims continue to be subject to Interior's regulatory authority.

Under 43 U.S.C. § 1457, "[t]he Secretary of the Interior is charged with the supervision of the public business relating to . . . . [p]ublic lands, including mines." That charge includes Interior's responsibility to determine whether claims to public lands are proper. 43 U.S.C. § 2 (providing that the Secretary "shall perform all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, and, also, such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the Government"); Schade v. Andrus, 638 F.2d 122, 124-25 (9th Cir. 1981) (discussing the "established principle that the Secretary of the Interior has 'broad plenary power over the disposition of public lands.' . . . so long as legal title remains in the government, there is continuing jurisdiction in the Department to consider all issues in land claims" (internal citations omitted)). Indeed, courts have characterized Interior's power to supervise the public lands as being "widely different from ordinary executive action," Morgan v. United States, 298 U.S. 468, 480 (1936), as it entails an exercise of quasi judicial authority within an area of special expertise. United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1996); see also Best v. Humboldt Placer Mining Co., 371 U.S. 334, 336 (1963) ("[T]he Department [of the Interior]

has been granted plenary authority over the administration of public lands, including mineral lands; and it has been given broad authority to issue regulations concerning them.”).

Until a patent issues, as explained above, the United States retains paramount rights and interest in the federal lands underlying the mining claim and maintains the authority to regulate the uses of those lands. 30 U.S.C. § 612(b); Best, 371 U.S. at 336; Bosworth, 502 F. Supp. 2d at 1216-20. Consequently, Interior may challenge the validity of a claim at any time prior to patent because “the power of the department to inquire into the extent and validity of the rights claimed against the Government does not cease until the legal title has passed.” Michigan Land & Lumber Co. v. Rust, 168 U.S. 589, 593 (1897); Ideal Basic Indus., Inc. v. Morton, 542 F. 2d 1364, 1367 (9th Cir. 1976) (acknowledging the Secretary’s “continuing jurisdiction with respect to these lands until a patent issues”).

Indeed, “[a] mining location which has not gone to patent is of no higher quality and no more immune from attack and investigation than are unpatented claims under the homestead and kindred laws.” Cameron v. United States, 252 U.S. 450, 459-60 (1920). In Cameron, the Supreme Court affirmed the continuing authority of Interior to determine the validity of all unpatented claims, explaining:

> By general statutory provisions the execution of the laws regulating the acquisition of rights in the public lands and the general care of these lands is confided to the land department, as a special tribunal; and the Secretary of the Interior, as the head of the department, is charged with seeing that this authority is rightly exercised to the end that valid claims may be recognized, invalid ones eliminated, and the rights of the public preserved.

252 U.S. at 459-60; see also West v. Standard Oil Co., 278 U.S. 200, 219 (1929); Bosworth, 502 F. Supp. 2d at 1216-20.

Current laws and regulations provide that the Government may initiate an administrative contest proceeding "for any cause affecting the legality or validity" of any mining claims within federal ownership. 43 C.F.R. § 4.451-1. There is nothing in the language of the regulations that contains any time limitations or restrictions for determining claim validity. See Swanson v. Babbitt, 3 F.3d 1348, 1350 (9th Cir. 1993) ("At any time prior to the issuance of a patent, the government may challenge the validity of the mining claim and, if successful, the claim will be cancelled with all rights forfeited."); Bosworth, 502 F. Supp. 2d at 1216.

Thus, an administrative contest proceeding may be filed if, for example, the Government determines that the mining claim does not contain a discovery of a valuable mineral deposit or the minerals on the claim are not locatable under the Mining Law. Cameron, 252 U.S. at 461. For example, the Government may contest an unpatented mining claim located for "uncommon variety" minerals which were once determined to be locatable for a particular purpose, if there has been a loss of market, decrease in prices paid for the material, or the development of a new material which has eliminated the "distinct and special value" needed to support the "uncommon variety" designation. Bosworth, 502 F. Supp. 2d at 1215-16.

In sum, in order to appropriately administer the unpatented mining claims at issue here, Interior – consistent with the agency's statutory mandate – must determine whether formerly locatable pumice remains as such (i.e., given changes in the marketplace and in the price and use of pumice previously found locatable for stonewashing) and, thus, may be continue to be removed notwithstanding the JNRAA's prohibition on removing common variety materials. Again, unless and until a mining claim is patented out from the United States, Interior retains plenary authority granted by Congress to determine whether a mining claim is valid at any time.

43 U.S.C. § 2.

Similarly, the Government's approval of Cook's mining plan of operations is contingent upon Cook demonstrating compliance with all applicable Federal and state laws and regulations. Bosworth, 502 F. Supp. 2d 1205-1209 (discussing 36 C.F.R. § 228.2 Subpart A). Where a mining claimant submits a proposed plan to remove materials that may have been withdrawn from location under the Common Varieties Act, the Government first verifies locatability to make sure that the minerals are subject to the Mining Law and the locatable minerals regulations. See, e.g., id.; United States v. Stacey, 171 IBLA 170 (2007) (contest involving a common variety determination before approving a plan of operations on Forest Service-managed lands); see also 43 CFR § 3809.101 (requirement to perform common variety determination before approving a mining plan). Moreover, where a mining claim is located on lands withdrawn from the operation of the Mining Law, the mining claim must be determined to be presently valid prior to the Government approving any land management use decision regarding locatable minerals, such as new mining plans of operations. 502 F. Supp. 2d at 1217 ("[I]t is clear that the agency has continuing authority to monitor whether mining operations are complying with federal regulations, which includes assuring that a miner is extracting locatable pumice."); see also 36 C.F.R. § 228.1 (stating that the rules and procedures in part 228A apply "in connection with operations authorized by the United States mining laws (30 U.S.C. 21-54)"). Operators who are adversely affected by a decision regarding plan processing or approval may appeal through a Department of Agriculture administrative appeal process. See 36 C.F.R. 251.82.

The interpretation of the Settlement Agreement that Cook advances – that the Government promised freedom from any ongoing maintenance or regulatory requirements of the

Mining Law – effectively would give Cook all of the benefits of a patented mining claim. However, Cook already has been compensated for the loss of the right to patent the Brown Placer Mining Claims at issue and explicitly acknowledged the retention of only unpatented claims.

C. Cook's Interpretation Of The Settlement Agreement Cannot Be Sustained

Notwithstanding the plain language of the Settlement Agreement subjecting Cook's unpatented mining claims to "all pertinent statutes and regulations," see SA at ¶ 3, Cook argues that "the parties plainly intended that Plaintiffs retain the mining claims and continue mining operations on the claims." Pl. Mem. at 5. Cook further posits that the Government's view of the "all pertinent statutes and regulations" language in the Settlement Agreement is "irreconcilable with the government's specific promise that Plaintiffs were entitled to retain the mining claims." Pl. Mem. at 6.

Cook's arguments are meritless. First, the word "all" in the phrase "all pertinent statutes and regulations," see SA at ¶ 3 (emphasis added), is "broad and unequivocal." SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1344 (Fed. Cir. 2001); see also Nat'l Steel & Shipbuilding Co. v. United States, 419 F.2d 863 (Ct. Cl. 1969) (holding that "purpose [of the word 'all'] is to underscore that intended breadth is not to be narrowed" and that "'[a]ll' means all and not substantially all"). If the parties had intended to carve out exceptions – i.e., statutes and regulations to which Cook's mining claims would not be subject – the parties would have done so explicitly. Cook's view reads the word "all" out of the Settlement Agreement.

Second, Cook's reliance "on the very specific language which authorizes Plaintiffs . . . to

remove uncommon variety pumice" is misplaced for the simple reason that such language **does not exist**. Rather, the Settlement Agreement provides that "Plaintiffs are prohibited from the disposal of the common variety pumice from Brown Placer Mining Claims Nos. 9-12." SA at ¶ 3 (emphasis added). From that proscriptive language limiting Cook's rights, Cook expects this Court to deduce that the Government actually intended to make an unfettered promise that Cook could always, and without restriction, remove pumice that Cook deems uncommon. Nowhere does the Settlement Agreement contain such a promise; nor should one be inferred, particularly where, as here, such an inference would nullify the word "all" in the preceding sentence of the agreement.

Cook next argues that the United States has breached the implied covenant of good faith and fair dealing inherent in all contracts. See Pl. Mem. at 7. Cook fails, however, to allege any facts to support its claim for breach of that obligation. Thus, although we agree that "[t]he obligation of good faith and fair dealing is implied in every contract with the Government," Pratt v. United States, 50 Fed. Cl. 469, 478 (2001) (citing Maxima Corp. v. United States, 847 F.2d 1549, 1556-57 (Fed. Cir. 1988)), "[t]he obligation is not ethereal; it must attach to a specific, substantive obligation, mutually assented to by the parties." 50 Fed. Cl. at 478-79 (citing State of Alaska v. United States, 35 Fed. Cl. 685, 704 (1996), aff'd, 119 F.3d 16 (Fed. Cir. 1997)).

Moreover, the Federal Circuit has found that, because government officials are presumed to act in good faith in the discharge of their duties, a plaintiff's burden of proof is exceedingly stringent. Spezzaferro v. FAA, 807 F.2d 169, 173 (Fed. Cir. 1986); Am-Pro Protective Agency, Inc. v. United States,281 F.3d 1234, 1204 (Fed. Cir. 2002) ("[S]howing a government official

acted in bad faith is intended to be very difficult, and that something stronger than a 'preponderance of evidence' is necessary to overcome the presumption that he acted in good faith."). Accordingly, "[t]o prevail on a claim for breach of good faith and fair dealing, a plaintiff must allege and prove facts constituting a specific intent to injure plaintiff on the part of a government official." Pratt, 50 Fed. Cl. at 478 (emphasis added) (noting that on "summary judgment the court therefore must examine the record for evidence of malice or intent to injure plaintiff as demonstrated by specific acts of bad faith."); Detroit Housing Corp., v. United States, 55 Fed. Cl. 410, 417 (2003) (citing Torncello v. United States, 231 Ct. Cl. 20, 47 (1982), and explaining that, to satisfy the high burden of proof, plaintiff must present "well-nigh irrefragable proof" that the government acted in bad faith).

Cook's new complaint fails as a matter of law because Cook does not identify a specific, substantive obligation in the Settlement Agreement, mutually assented to by the parties, that contains either an express or implied obligation on the part of United States not to challenge the validity of unpatented mining claims or that Cook could forever mine for pumice that Cook deems uncommon. In addition, in the absence of any specific allegations that Interior acted with malice or intent to injure Cook by particular acts, any count for breach of the implied covenant of good faith and fair dealing must be dismissed as a matter of law. Detroit Housing Corp., v. United States, 55 Fed. Cl. 410 (2003) (citing Torncello v. United States, 231 Ct. Cl. 20, 47 (1982)).

Finally, Cook argues, see Pl. Mem. 7-8, that the United States breached the Settlement Agreement because a finding of mining claim invalidity in the pending administrative contest proceeding would void the claims as of the date the lands were withdrawn from the Mining Law

under the JNRAA. This is erroneous. The contest complaint challenges only the present marketability of the mining claims. Any determination of invalidity will be made as of the time of the hearing only. Thus, neither the contest complaint, nor any other action by Interior, seeks either to void the mining claims as of the date of their withdrawal or to otherwise disturb the findings of Cook I or Cook II.

In sum, the United States has fully performed its obligations under the Settlement Agreement: the United States paid $3,911,831.00 to Cook and has allowed plaintiffs to continue to hold the Brown Placer Mining Claims as unpatented mining claims. Plaintiffs have not alleged any facts that, if true, constitute a failure to perform, or a breach of, the Settlement Agreement on the part of the United States. Accordingly, Cook has failed to state a claim for breach of contract and the complaint should be dismissed.

## III. In The Alternative, To The Extent Plaintiffs' Complaint Primarily Seeks Equitable Relief, It Should Be Dismissed Under RCFC 12(b)(1) For Lack Of Jurisdiction

Generally, this Court possesses jurisdiction to entertain monetary claims founded upon the Takings Clause of the United States Constitution, statutes, regulations, or contracts. See 28 U.S.C. § 1491(a)(1); see United States v. Mitchell, 463 U.S. 206, 215-18 (1983). The statutory, constitutional, or contract claims a plaintiff asserts must be "money-mandating" to come within the jurisdiction of the Court. United States v. Testan, 424 U.S. 392, 398 (1976). The Tucker Act, however, does not grant this Court authority to hear "every claim involving or invoking the Constitution." Eastport Steamship Corp. v. United States, 732 F.2d 1002, 1007 (Ct. Cl. 1976). Moreover, amongst other actions, the Court cannot entertain claims: (1) sounding in tort or for civil wrongs committed by agents of the United States, see, e.g., Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997); Shearin v. United States, 992 F.2d 1195, 1197 (Fed. Cir. 1993);

or (2) for declaratory or injunctive relief outside the bid protest context, James v. Caldera, 159 F.3d 573 (Fed. Cir. 1998).

Accordingly, the law is well settled that this Court "does not have general equitable powers." Doe v. United States, 372 F.3d 1308, 1313-14 (Fed. Cir. 2004). The question is "whether the request for relief is, on its face or in substance, a request for money damages as opposed to equitable relief." Id. If the latter, this Court lacks jurisdiction. Under 28 U.S.C. § 1491(a)(2), this Court does have limited equitable powers, but only if they are necessary for complete relief and if they are "incidental of and collateral to" the judgment. See Bobula v. United States Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992). In other words, this Court cannot grant nonmonetary equitable relief such as an injunction, a declaratory judgment or specific performance. First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999); Griswold v. United States, 61 Fed. Cl. 458, 466-67 (2004).

To the extent that Cook's primary goal in this case is to obtain injunctive and equitable relief, this Court lacks jurisdiction over Cook's complaint. Indeed, Cook seeks a variety of such relief, and Cook's request for damages is merely incidental to the multiplicity of requests for injunctions, declaratory judgments, and specific performance. Because Cook's requests for equitable relief are not "incidental of and collateral to" any money judgment Cook purports to seek, this Court has no jurisdiction to entertain Cook's claims for equitable relief.

**CONCLUSION**

For all of the above reasons, we respectfully urge this Court to dismiss plaintiffs' complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

Attorneys for Defendant

Of counsel:
Patricia Leigh Disert
Office of the General Counsel
U.S. Department of Agriculture
Albuquerque, NM

August 26, 2008